UNITED STATES of America,
Plaintiff–Appellee,

v.

Ricardo BORDALLO, Governor of
Guam, Defendant–Appellant.

No. 87–1092.

United States Court of Appeals,
Ninth Circuit.

Argued June 15, 1988.

Submitted July 25, 1988.

Decided Aug. 30, 1988.

Howard Trapp, Howard Trapp Incorporated, Agana, Guam, for defendant-appellant.

K. William O'Connor, U.S. Atty., Agana, Guam, for plaintiff-appellee.

Before SCHROEDER and WIGGINS, Circuit Judges, and KELLEHER,[*] District Judge.

SCHROEDER, Circuit Judge:

Ricardo Bordallo, former Governor of Guam, appeals his conviction, after a jury trial, of criminal charges including extortion, bribery, and witness tampering. The charges stemmed from Bordallo's acceptance of cash payments totaling $79,600 in exchange for the award of government contracts. Bordallo characterized the payments as "campaign contributions" with "no strings attached." On appeal, Bordallo challenges the jury selection process, the sufficiency of the evidence, evidentiary rulings, and the jury instructions. We affirm Bordallo's convictions for witness tampering and conspiracy to obstruct justice. We reverse Bordallo's convictions for bribery, conspiracy to commit bribery, extortion, and conspiracy to commit extortion.

## BACKGROUND

Bordallo was elected the Governor of Guam in 1982, and his term was to expire

---

[*] Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation.

on January 4, 1987. In September 1986, the Guam Federal Grand Jury indicted Bordallo on criminal charges. The Government's case centered on four transactions occurring while Bordallo was Governor. These are characterized in the record as: (1) the TC & C payoff, (2) the Sood/Sablan transaction, (3) the IT & E payoff, and (4) the Jones gratuity.

In the TC & C payoff, Johnny Carpio, owner of an engineering firm and a political supporter of Bordallo, was approached by TC & C, Inc. in September 1984. TC & C offered to make a $50,000 to $100,000 "campaign contribution" to Bordallo in exchange for Bordallo's help in obtaining approval for its proposed scrap metal plant. Carpio conveyed the message to Bordallo. On December 10, 1984, TC & C delivered $50,000 cash to Carpio's office. Carpio kept $10,000 for himself and gave the remaining $40,000 to Bordallo in a manila envelope, stating that it was TC & C's "initial contribution." Two hours later, Bordallo approved the TC & C project. On October 11, 1985 and January 15, 1986, Carpio delivered two more cash "contributions" of $10,000 each from TC & C to Bordallo. Each time Bordallo accepted the money with the rote proclamation, "there's no strings attached."

In the Sood/Sablan transaction, Vinay Sood, owner of another engineering firm and also a Bordallo supporter, was awarded a government contract for a $103,000 project on the condition that Sood hire Herman Sablan, Bordallo's campaign manager.

The IT & E payoff involved $39,000 owed by the Guam Telephone Authority (GTA) to IT & E, a private local telephone corporation. At Sablan's suggestion, GTA, whose chief executive was related to Bordallo by marriage, agreed to pay the $39,000 it owed to IT & E on the condition that IT & E would deliver the funds to Bordallo as a "campaign contribution." GTA paid the bill in two installments. John Borlas, an IT & E executive, delivered the first installment of $9,600 cash to Bordallo in a plain envelope, which Bordallo accepted. The second installment was paid by GTA to IT & E but no payment was made to Bordallo

because the FBI's investigation of Bordallo had then become known.

Finally, in the Jones gratuity, Kenneth Jones, owner of substantial business interests on Guam, presented Bordallo with $10,000 cash in a plain envelope as a "present." Jones claimed there were "no strings attached."

On September 3, 1986, the Guam Federal Grand Jury indicted Bordallo on criminal charges. On November 20, 1986, the grand jury issued a superseding indictment charging Bordallo with two counts of conspiracy to commit extortion under 18 U.S. C. § 1951, three counts of extortion under 18 U.S.C. § 1951, four counts of bribery or gratuity under 18 U.S.C. § 666(b), conspiracy to commit bribery under 18 U.S.C. § 371, attempted extortion under 18 U.S.C. § 1951, four counts of fraud by wire under 18 U.S.C. § 1343, conspiracy to obstruct justice under 18 U.S.C. § 371, and witness tampering under 18 U.S.C. § 1512. These counts stemmed from the four transactions previously described and from related conspiracies and coverups.

Bordallo's jury trial on these seventeen counts began January 12, 1987. On February 13, 1987, the unanimous jury convicted Bordallo of ten of the seventeen counts— two counts of conspiracy to commit extortion, two counts of extortion, three counts of bribery or gratuity, one count of conspiracy to commit bribery, one count of conspiracy to obstruct justice, and one count of witness tampering. Bordallo was acquitted of one count of attempted extortion, one count of extortion, one count of bribery or gratuity, and four counts of fraud by wire. The district court sentenced Bordallo to three years imprisonment on each of the ten counts, with the sentence of imprisonment on seven of the counts to run concurrently. The court then suspended the concurrent sentence, leaving Bordallo with a nine-year prison term. The court also sentenced Bordallo to five years probation, to a total of $35,000 in fines, to an assessment fee of $500, and to $79,600 in restitution. Bordallo timely appeals pursuant to 28 U.S.C. § 1291.

## DISCUSSION

On appeal, Bordallo challenges (1) the jury selection process, (2) the sufficiency of the evidence, (3) two evidentiary rulings, and (4) four of the jury instructions.

### A. *Jury Selection Process*

■ Bordallo's trial commenced on January 12, 1987. On that day, before the proceedings officially began at 9:45 a.m., and while the veniremembers were in the courtroom, the district judge excused some of the prospective jurors. Neither Bordallo nor his counsel were present; although the record is unclear, it appears that the prosecuting attorneys also were not present. The prospective jurors knew which case they would hear if chosen as a juror, and some were excused specifically because they were friends or supporters of Bordallo. Bordallo learned of the district judge's actions through discussions with some excused jurors outside the courtroom.

Almost immediately after formal proceedings began, Bordallo objected to the release of the jurors in his absence. At the conclusion of opening arguments, Bordallo moved for a mistrial on this basis. The court denied the motion, stating that the released jurors were veniremembers not yet impaneled.

Fed.R.Crim.P. 43(a) provides that the defendant "shall be present" at every stage of trial, including the impaneling of the jury.

> (a) *Presence Required.* The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

Fed.R.Crim.P. 43(a). Both Bordallo and his counsel were present at the voir dire examination, and in fact, at all proceedings involving the jury from the time that the thirty-nine prospective jurors were sworn.

■ The defendant's right to be present during the trial emanates from due process. The Supreme Court has held "that the orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entities the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict." *Rogers v. United States,* 422 U.S. 35, 38, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975) (citation omitted); *see also Shields v. United States,* 273 U.S. 583, 588–89, 47 S.Ct. 478, 479–80, 71 L.Ed.2d 787 (1927); *United States v. Frazin,* 780 F.2d 1461 (9th Cir.), *cert. denied,* 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986).

There is authority that Rule 43 requires the defendant's presence at the voir dire examination of prospective jurors. *Virgin Islands v. George,* 680 F.2d 13 (3d Cir. 1982); *United States v. Crutcher,* 405 F.2d 239 (2d Cir.1968), *cert. denied,* 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969). Clearly counsel must be present for the examination of the prospective jurors and exercise of peremptory challenges. *See* Fed.R.App.P. 24. At the stage of voir dire, the prospective jurors are questioned about their knowledge of a specific case; the jurors know what case they will hear if selected and know which parties are involved. At least one court has said that "an accused in a capital case has a constitutional right to be continuously present at all stages of the proceedings from arraignment to final sentence, including a proceeding where jurors for the trial of the case are challenged and their qualifications inquired into." *Welch v. Holman,* 246 F.Supp. 971, 973–74 (M.D.Ala.1965), *aff'd,* 363 F.2d 36 (5th Cir.1966). But *Welch* did not extend that right to all court contacts with jurors.

It is thus not surprising that there is authority that the defendant has no right to be present during the drawing of the jury by the jury commissioners. *Pope v. United States,* 287 F.Supp. 214 (W.D.Tex. 1967), *aff'd,* 398 F.2d 834 (5th Cir.1968), *cert. denied,* 393 U.S. 1097, 89 S.Ct. 886, 21 L.Ed.2d 787 (1969). The drawing of names is a ministerial act occurring before a specific case is called for trial, and thus does not involve juror qualifications as related to a particular criminal case. As Judge

Johnson held in *Welch*, the defendant's right to be present "does not mean, however, that the judge of a court cannot organize his court and qualify his prospective jurors generally, without bringing into court for such a proceeding each and every defendant who may be tried during the entire term." 246 F.Supp. at 974.

This case falls somewhere between the ministerial stage of drawing the prospective juror pool and the formal pretrial narrowing of the pool through voir dire for a particular trial. We conclude the present situation is more appropriately analogized to voir dire, because the prospective jurors knew which specific case they would hear, and some were excused due to factors related to Bordallo's particular cause. Although no particular prejudice is alleged here, circumstances could arise in which a judge, either consciously or inadvertently, excused a disproportionate percentage of a juror population, such as women or minorities, *see, e.g., Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), or otherwise adversely affected the neutrality of the juror pool. Requiring the defendant's presence before excusing prospective jurors for a specific case protects against such risks. We conclude that either the defendant or his counsel should have been present. Neither was.

■ However, even if the error amounted to a due process violation, the "violation of a defendant's due process right to be present at all stages of trial is subject ... to the harmless error rule" of *Chapman v. California*, 386 U.S. 18, 21–22, 87 S.Ct. 824, 826–27, 17 L.Ed.2d 705 (1967). *Frazin*, 780 F.2d at 1469. This error was harmless beyond a reasonable doubt. The record is clear that those particular prospective jurors who were released would and should have been released in any event. The court's release of these prospective jurors before voir dire could not have contributed to the verdict. Their release was harmless error.

B. *Applicability of 18 U.S.C. § 666 to Guam*

■ Bordallo was charged and convicted of bribery under 18 U.S.C. § 666(b). At the time of the offenses charged, section 666(b) provided:

> (b) Whoever, *being an agent of an organization, or of a State or local government agency,* described in subsection (a), solicits, demands, accepts, or agrees to accept anything of value from a person or organization other than his employer or principal for or because of the recipient's conduct in any transaction or matter or a series of transactions or matters involving $5,000 or more concerning the affairs of such organization or State or local government agency, shall be imprisoned for not more than ten years or fined no more than $100,000 or an amount equal to twice that which was obtained, demanded, solicited or agreed upon in violation of this subsection, whichever was greater, or both so imprisoned and fined.

18 U.S.C. § 666(b) (1984) (emphasis added), *amended* Pub.L. No. 99–646, § 59(a), 100 Stat. 3612 (1986). Bordallo contends that section 666 applies to agents of a "state" government, and Guam is not a state.

The version of section 666(b) in effect at trial applied to "agent[s] of an organization, or of a State or local government agency." 18 U.S.C. § 666(b) (1984). Section 666(d) defined "organization" and "local," and those definitions clearly excluded Guam. "Organization" was defined as "a legal entity, *other than a government.*" 18 U.S.C. § 666(d)(2) (1984) (emphasis added). " '[L]ocal' means of or pertaining to a political subdivision *within a State.*" 18 U.S.C. § 666(d)(4) (1984) (emphasis added). Only "state" was left undefined.

Officially, Guam is an "unincorporated territory." 48 U.S.C. § 1421a ("Guam is declared to be an unincorporated territory of the United States"). We have previously held that constitutional restrictions on the states' regulation of interstate commerce do not extend to Guam because it is an unincorporated territory. *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1287 (9th Cir.1985), *cert. denied*, 475 U.S. 1081, 106 S.Ct. 1457, 89 L.Ed.2d 715 (1986). Likewise, we have held that references to

an action in "state court" do not include actions in the courts of Guam unless Congress expressly so provides. *Guam v. Landgraf,* 594 F.2d 201, 202 (9th Cir.1979) (dealing with removal of an action under 28 U.S.C. § 1443(1)).

Guam is not a state. In the absence of express congressional intent to include Guam within the proscriptions of this statute, we cannot hold that the statutory provisions apply to Guam. We therefore are compelled to reverse Bordallo's convictions for three counts of bribery under 18 U.S.C. § 666, and one count of conspiracy to commit bribery under 18 U.S.C. § 371.

### C. *18 U.S.C. § 1512—Witness Tampering*

■ Bordallo next contends that the evidence does not support his conviction for witness tampering under 18 U.S.C. § 1512. In reviewing the sufficiency of the evidence, we must determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *see also United States v. Patton,* 771 F.2d 1240, 1243 (9th Cir.1985). "In reaching our determination, we draw all reasonable inferences favorable to the government." *United States v. Reese,* 775 F.2d 1066, 1071 (9th Cir.1985); *see also United States v. Vaughn,* 797 F.2d 1485, 1489 (9th Cir.1986).

As an initial matter, the parties dispute whether the witness tampering charge applies only to Bordallo's contacts with Johnny Carpio, or encompasses contacts with others as well. However, it is clear from the jury instructions that this count was intended to apply only to Bordallo's contacts with Carpio. The jury instructions provided:

> Now with regard to witness tampering, which is a violation provided for under Section 1512, Title 18, United States Code, these are the essential elements ...—first, that the defendant was engaged in misleading conduct toward

Johnny P. Carpio; second, that the defendant did so knowingly with intent, a) to influence the testimony of the witness Johnny P. Carpio before the Federal Grand Jury; b) to hinder, delay, and prevent truthful communication and information to the Federal Bureau of Investigation relating to the commission of a Federal offense.

The applicable version of section 1512 provided:

> (a) Whoever knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> (1) influence the testimony of any person in an official proceeding;
>
> (2) cause or induce any person to—(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding; (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding; (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or (D) be absent from an official proceeding to which such person has been summoned by legal process; or
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings; shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 1512(a) (1982).

Bordallo was charged with violating this section by engaging in misleading conduct. There is some uncertainty as to whether the statute requires the defendant to have misled the witness. The Second Circuit has held that it does. In *United States v. King,* 762 F.2d 232 (2d Cir.1985), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1203, 89 L.Ed.2d 316 (1986), the court held that

there was no violation of section 1512 because

the evidence did not indicate that [the defendant] had misled [the witness] in any way. Rather, "[the defendant], simply and flat-out, tried to persuade [the witness] to lie" to mislead the government.

*Id.* at 237; *see also United States v. Risken*, 788 F.2d 1361, 1368–69 (8th Cir.) (citing *King* with approval), *cert. denied*, 479 U.S. 923, 107 S.Ct. 329, 93 L.Ed.2d 302 (1986). *But cf. United States v. Wesley*, 748 F.2d 962, 964 (5th Cir.1984), *cert. denied*, 471 U.S. 1130, 105 S.Ct. 2664, 86 L.Ed.2d 281 (1985) (holding that "urging and advising" witness to testify falsely violates section 1512 without indicating whether there was intimidation or misleading conduct). We find that Bordallo's conviction is supported by sufficient evidence under either standard.

Under the Fifth Circuit's reasoning that "urging and advising" false testimony is sufficient to sustain a witness tampering conviction, the result is clear. Carpio testified that Bordallo asked him to lie to the grand jury.

Under the Second Circuit's precedent, there is no "misleading conduct" if an individual is asked to tell a story that the individual knows is false. *King*, 762 F.2d at 237. However, the Second Circuit has also held that making false statements to convince another to lie in an official proceeding does constitute the misleading conduct required to violate the statute. *United States v. Rodolitz*, 786 F.2d 77, 82 (2d Cir.), *cert. denied*, 479 U.S. 826, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986). "The most obvious example of a section 1512 violation may be the situation where a defendant tells a potential witness a false story as if the story were true, intending that the witness believe the story and testify to it before the grand jury." 786 F.2d at 82.

In this case Johnny Carpio's testimony spans five volumes of the Reporter's Transcript. At the time of the FBI's investigation into the "contributions" received by Bordallo, but before Bordallo asked Carpio to lie to the grand jury, Carpio believed Bordallo used the funds for altruistic purposes. Carpio testified Bordallo had told him on several occasions that the cash "contributions" were used to help the poor, and were not for Bordallo's personal gain. Carpio further testified that when questioned by the FBI about "contributions" to Bordallo, Carpio told the FBI that "as far as I know all political contributions are being used by the Governor to help the people, the poor people in the south." Carpio also testified, "I've always believed all along that [Bordallo] was giving [the money] to the people."

Carpio admitted that he obtained a fake receipt for $58,000 from another individual for the purpose of halting the FBI's investigation of Bordallo. After obtaining the fake receipt, Carpio arranged to meet with the FBI, told them the money had been returned, and gave the FBI the receipt.

Taking the view most favorable to the verdict, the jury could conclude that Carpio's attempt to stop the FBI's investigation was based on misguided loyalty to Bordallo, because Carpio believed the funds were going toward a good purpose. Carpio told the FBI that the funds went to the poor, and obtained a fake receipt to hinder the investigation. This evidence could support a conclusion that Bordallo misled Carpio.

Bordallo also contends there was insufficient evidence for the jury to find that Bordallo intended to hinder the FBI investigation. The jury here could have concluded that Bordallo initially knowingly misled Carpio, intending that Carpio would offer Bordallo's explanation concerning the funds to the FBI. *See Rodolitz*, 786 F.2d at 82.

Sufficient evidence supported Bordallo's conviction for witness tampering.

### D. *Evidentiary Rulings*

Bordallo challenges two of the district court's evidentiary rulings: (1) the admission of the Sablan "perspective," and (2) the admission of the testimony of an attorney. The district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Olsowy*, 836 F.2d 439, 443

(9th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988).

### 1. *Sablan "perspective"*

■ Sablan was Bordallo's campaign manager, and participated in the IT & E transaction. Sablan was later charged with extortion, and after pleading guilty to that charge, he wrote a "perspective." In this "perspective," Sablan reflected upon his involvement in the transaction and described his view of the political attitudes on Guam.

Bordallo contends that the "perspective" was both irrelevant and highly prejudicial. The "perspective," as read before the jury, provided in relevant part:

> In reflecting upon my involvement in the Guam Power Authority/Commercial Port case, I see it as a symptom of what is really becoming a malignant cancer of corrupted attitudes.... It has gotten to the point where, if you don't contribute, you don't get any government business.... When political leaders accept gifts and free trips, or promise contracts yet unannounced, they essentially are expressing to the people that only "they" can do it, or that this is an acceptable standard. When Government does not deposit employees' contributions to their retirement fund for credit union, it displays another disregard for ethics.... Agency Heads see these, and some, finally succumb to temptations. Then other subordinates begin to pick up the practice. Favors become obvious—exceptions made become obvious. These practices have infested the Government "principle." It has taken over the system. The cancer has spread.... I am in total agreement of doing away with a corrupted system—of cleaning up. We need to bring back a sense of fair play—clean competition. We need to leave something better for our kids.

Admitting the "perspective" into evidence was error. The district court should have excluded the "perspective" as hearsay. There was no significance to the fact that Sablan had written a "perspective"; the significance of the "perspective" was in its content. The "perspective" was offered to prove the truth of the matter asserted—that payoffs were common—and therefore it constituted hearsay evidence. *See* Fed. R.Evid. 801(c). Moreover, the "perspective" was irrelevant because even if payoffs were common, this does not establish Bordallo's involvement in any payoffs.

■ However, the erroneous admission of hearsay evidence does not always constitute reversible error. Other evidence at Bordallo's trial concerned the prevalence of Guam's corrupt political climate. Sablan personally testified at the trial as to his opinion of Guam's political climate before his "perspective" was introduced into evidence, and other witnesses testified as to cash payoffs. The "perspective" comprised four pages out of more than 3600 pages in the trial record. The "perspective" did not "so pervade the trial with prejudice so as to constitute an unfair trial." *United States v. Nace,* 561 F.2d 763, 769 (9th Cir.1977) (no error in refusing to grant motion for mistrial where challenged interchange comprised three pages of 1680–page trial record and interchange not so prejudicial as to render trial unfair).

Admitting the "perspective" constituted harmless error.

### 2. *Carbullido's testimony*

■ Bordallo contends that Phil Carbullido, in his capacity as an expert witness, improperly offered a legal opinion that Bordallo was guilty of wrongdoing. Carbullido is a Guam attorney and was a member of Bordallo's Advisory Council.

Carbullido offered no legal opinion as to Bordallo's guilt. Carbullido was called as a Government witness, and on direct examination he testified that he was an attorney, that he served on Bordallo's Advisory Council, and that Rose Ramsey, Bordallo's deputy chief of staff, sought his legal advice regarding the propriety of a campaign contribution. Carbullido testified as to the questions Ramsey had asked of him and the advice he offered to her. Carbullido then testified that he resigned from his position on Bordallo's Advisory Council due

to the contributions described to him by Ramsey.

None of Carbullido's testimony was improper or prejudicial. There was no abuse of discretion in its admission.

### E. *Jury Instructions*

Bordallo challenges four of the district court's jury instructions. Bordallo contends: (1) the instruction as to extortion was plain error because the jury was not told that a demand is necessary under the Hobbs Act; (2) the conspiracy to extort instruction was plain error because it was confused with the general conspiracy statute and there was spillover prejudice from the erroneous extortion instruction; (3) the instruction as to conspiracy to obstruct justice constituted reversible error because the indictment charged Bordallo with four offenses in the obstruction of justice charge but the jury was only instructed on the elements of one of those offenses; and (4) the district court erred by giving a general, rather than a specific, unanimity instruction.

In reviewing jury instructions, we give the trial judge "substantial latitude" so long as the instructions "fairly and adequately cover the issues presented." *United States v. Abushi*, 682 F.2d 1289, 1299 (9th Cir.1982). "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *United States v. Park*, 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975), *quoting Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973); *see also United States v. Green*, 745 F.2d 1205, 1209 (9th Cir.1984), *cert. denied*, 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985). "Jury instructions, even if imperfect, are not a basis for overturning a conviction absent a showing they constitute an abuse of the trial court's discretion." *Green*, 745 F.2d at 1209.

Bordallo did not object to two of the four instructions now challenged on appeal—the obstruction of justice instruction and the unanimity instruction. Because there was no objection to those instructions at trial,

we review those instructions under the "plain error" standard. *United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986). "Reversal of a criminal conviction on the basis of plain error is an exceptional remedy, which we invoke only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *Id.; see also United States v. Paris*, 827 F.2d 395, 398 (9th Cir.1987). Rarely will an improper jury instruction justify a finding of plain error. *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); *United States v. Glickman*, 604 F.2d 625, 632 (9th Cir.1979), *cert. denied*, 444 U.S. 1080, 100 S.Ct. 1032, 62 L.Ed.2d 764 (1980).

### 1. *Extortion instruction*

██ Bordallo contends that the extortion instruction constituted error because the jury was not told that a demand is necessary under the Hobbs Act. The Hobbs Act provides, in relevant part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both....

(b) As used in this section— ...

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C. § 1951.

The jury instruction on extortion specifically permitted the jury to find Bordallo guilty of violating the Hobbs Act without making a demand or otherwise inducing the payments. It provided:

In an extortion under color of official right, it does not matter whether the public official induces, urges or persuades payments to perform his duties or

not to perform his duties, so long as there is a wrongful taking by the public official. As long as the victim's motivation for the payment is based upon the recipient's office, and there is a wrongful taking by the public official, the conduct violates Section 1951 of Title 18, United States Code. . . .

However, we recently held in *United States v. Aguon*, 851 F.2d 1158 (9th Cir. 1988) (en banc), that inducement is a necessary element for conviction under the Hobbs Act. At 1165. Because the instructions permitted the jury to convict Bordallo based upon a wrongful taking without inducement, we must reverse Bordallo's two convictions for extortion under 18 U.S.C. § 1951.

### 2. *Conspiracy to extort instruction*

■ Bordallo argues that the conspiracy to extort instruction was erroneous because it was confused with the general conspiracy statute and there was spillover prejudice from the erroneous extortion instruction. We agree. The errors here are identical to those presented in *Aguon*.

Conspiracy to obstruct justice and conspiracy to commit mail fraud were treated as identical with conspiracy to extort, as though all three crimes of conspiracy were offenses under 18 U.S.C. § 371. The general conspiracy statute, for whose violation Congress has provided a maximum penalty of five years, was not distinguished from the relevant statute, whose violation carries with it a maximum penalty of twenty years. The confusion of the two statutes in the instruction of the court was plain error.

In addition, as the jury had been erroneously instructed on the crime of extortion, there was substantial prejudice to the defendant on the charge of conspiracy to extort—prejudice that spilled over from the instruction on extortion. Believing that it could convict on extortion without corrupt intent, the jury may well have concluded that the extortion Aguon was convicted of under Counts Two and

Three was evidence of her participation in the conspiracy under Count One. At 1169.

We likewise must reverse Bordallo's two convictions for conspiracy to commit extortion under 18 U.S.C. § 1951.

### 3. *Obstruction of justice instruction*

■ Bordallo next contends that the obstruction of justice instruction involved plain error. The indictment charged Bordallo with four offenses in the obstruction of justice charge: (1) witness tampering under 18 U.S.C. § 1512, (2) false statements under 18 U.S.C. § 1001, (3) false declarations before the grand jury under 18 U.S.C. § 1623, and (4) misprison of a felony under 18 U.S.C. § 4. The district court instructed the jury as to the elements of witness tampering, but did not address the remaining three offenses. Bordallo contends that the district court's failure to instruct the jury on the elements of the three remaining offenses requires us to reverse his conviction on this count. Because Bordallo did not object to this instruction below, we review for plain error. *Bustillo*, 789 F.2d at 1367.

The district court instructed the jury as to the elements of witness tampering under 18 U.S.C. § 1512, and those instructions are not challenged on appeal. The district court's failure to instruct the jury as to the other three offenses does not constitute plain error.

### 4. *Unanimity instruction*

■ Finally, Bordallo contends that the district court erred in giving a general, rather than a specific, unanimity instruction. Bordallo did not object to this instruction below, so we review for plain error. *Bustillo*, 789 F.2d at 1367.

The jury instruction on this issue provided:

Any verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. In other words, your verdict must be unanimous. . . .

Forms of verdict have been prepared for your convenience. There are 17 counts, there are 17 verdict forms. In other words, there is a verdict form for each of the 17 counts.

I'll give an explanation as to how to fill these forms. If, ensuing your deliberation, it is the unanimous determination of each and every one of the 12 jurors, let's say on Count One, conspiracy to commit extortion in violation of Section 1951 of Title 18 of the United States Code, that the defendant is not guilty of the offense, then there is a space in front of the word "Not Guilty," you should put an X in that particular box to indicate that particular verdict to which each and every one of you have agreed. If on the other hand it is the unanimous agreement of each and every one of you, ensuing your deliberation in this particular count that the defendant is guilty of the count as charged, you should then place an X mark on the space in front of the word "Guilty." And then have the foreperson which you have selected affix his or her signature, and then fill in the date in which this verdict has been reached, and there's a blank space there to indicate the date, the date in which you, the jurors, have agreed as to what that verdict is in that particular count. Then you should do likewise for each and every one of the 17 counts, follow the same procedure.

Bordallo argues that the jurors' mere agreement on guilt is insufficient. Instead, Bordallo contends that the jury had a duty to agree unanimously to a particular set of facts. However, the instruction on its face requires unanimity as to each count.

It is also significant that after the jurors were excused to begin deliberations, they requested a definition of "unanimous" from the court. The district judge held a conference in chambers with counsel from both sides, and all agreed that "unanimous means all the jurors must agree to each verdict on each count."

In *United States v. Ferris*, 719 F.2d 1405 (9th Cir.1983), we noted that in the ordinary case, a general instruction requiring a unanimous verdict will suffice. *Id.* at 1407.

Unanimity, of course, means more than a conclusory agreement that the defendant has violated the statute in question; there is a requirement of substantial agreement as to the principal factual elements underlying a specified offense.... We would consider it appropriate for the trial court to instruct the jury to this effect. In the routine case, however, failure to adopt this formulation is not error.

*Id.* Because the instruction required the jurors to reach unanimous agreement as to each count, and provided a verdict form for each of the seventeen counts, the lack of a specific unanimity instruction did not constitute plain error.

CONCLUSION

We REVERSE Bordallo's convictions for three counts of bribery under 18 U.S.C. § 666, one count of conspiracy to commit bribery under 18 U.S.C. § 371, two counts of extortion under 18 U.S.C. § 1951, and two counts of conspiracy to commit extortion under 18 U.S.C. § 1951. We AFFIRM Bordallo's convictions for one count of witness tampering under 18 U.S.C. § 1512 and one count of conspiracy to obstruct justice under 18 U.S.C. § 371. AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.