**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eddie HOLLAND, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David HELMECY, Defendant–Appellant.**

Nos. 88–1295, 88–1298.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1989.

Decided July 25, 1989.

Dale A. Drozd, Blackmon & Drozd, Sacramento, Cal., for defendant-appellant Eddie Holland.

Robert M. Wilson, Segal & Kirby, Sacramento, Cal., for defendant-appellant David Helmecy.

Rory K. Little, Sp. Atty., San Francisco Strike Force, U.S. Dept. of Justice, San Francisco, Cal., for the U.S.

Before BROWNING, HALL and LEAVY, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Eddie Holland, Sr. and David Helmecy were convicted by a jury of conspiracy falsely to represent, and falsely representing numbers to be social security account numbers in violation of 42 U.S.C. § 408(g)(2) (1982); subscription of false tax returns in violation of 26 U.S.C. § 7206(1) (1982); and conspiracy to obstruct justice in violation of 18 U.S.C. §§ 371, 1503 (1982). Holland was convicted of a substantive obstruction count under 18 U.S.C. § 1503, but Helmecy was acquitted.

Appellants raise a number of issues on appeal. None have merit, and we therefore affirm the convictions. Three issues are discussed below. The remaining claims are discussed in a memorandum disposition filed herewith.

Holland was the union dispatcher responsible for assigning longshoremen to work crews at the Port of Sacramento and for distributing paychecks. Helmecy was the Chief Superintendant of the Port and was responsible for reviewing payroll sheets and sending them to the Port's payroll agent. The payroll agent prepared paychecks for both union members and nonunion "casuals" employed during heavy work periods. Jerry Salgado was the payroll clerk at the Port and worked under Helmecy's direction. Salgado generally prepared the payroll sheets.

Holland, Helmecy, and Salgado jointly "padded" the Port payroll by adding to payroll sheets fictitious names and the names of real longshoremen who had not in fact worked the hours recorded. The resulting paychecks were cashed at a bar near the Port, and the proceeds divided equally among the three.

## I.

Salgado confessed his involvement to federal investigators and became a cooperating witness. He secretly taped a 90-minute conversation with Helmecy in which Helmecy incriminated himself and Holland. The tape was admitted into evidence and played at trial.

The district court admitted the Helmecy-Salgado tape against both Holland and Helmecy as a declaration against Helmecy's penal interest under Fed.R.Evid. 804(b)(3), citing *United States v. Layton*, 720 F.2d 548 (9th Cir.1983) ("*Layton I*"). Holland argues admission of the tape violated (A) the Federal Rules of Evidence and (B) the confrontation clause.[1]

## A.

■ Admissibility under Rule 804(b)(3) required (1) that Helmecy be unavailable, (2) that the statements "tend to subject [Helmecy] to criminal liability such that a reasonable person in [his] position would not have made the statement[s] unless he believed [them] to be true," and, arguably, (3) that "corroborating circumstances ... indicate the trustworthiness of the statement[s]." *Layton I*, 720 F.2d at 559. Helmecy exercised his right not to testify and was therefore unavailable. *See* Fed.R.Evid. 804(a)(1). The second requirement is fulfilled as well: the tape contains numerous admissions of Helmecy's illegal conduct. There is a question whether the third requirement applies when a declaration against penal interest is offered to inculpate rather than exculpate an accused. *See Layton I*, 720 F.2d at 559 (reserving question); *see also United States v. Candoli*, 870 F.2d 496, 509 (9th Cir.1989) (noting rulings of other circuits but reserving question). We need not resolve this issue, however. If the requirement applies to inculpatory statements, it was clearly satisfied here, as noted below.[2]

The tape was admissible under Rule 804(b)(3).

---

1. Helmecy does not challenge the admission of the tape against him. Nor could he. *See* Fed.R. Evid. 801(d)(2)(A).

2. Holland claims the district court admitted the tape in the belief it lacked any discretion to exclude it. A fair reading of Judge Schwartz's remarks, however, suggests he found *Layton I* controlling in light of its factual similarity to this case, not that he believed he lacked discretion.

### B.

▮ The confrontation clause permits use of out-of-court statements if the declarant is unavailable and the circumstances in which the statement was made indicate its reliability. *Bourjaily v. United States*, 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987). The declarant, as noted, was unavailable. Answers to the following questions are relevant to reliability: (1) whether the statement was voluntary; (2) whether it was contemporaneous with the matters described; (3) whether it included an admission of illegal or disreputable conduct; (4) whether it was corroborated; (5) whether the declarant possessed personal knowledge of the events described; (6) whether the statement was spontaneous; and (7) whether the auditor was one to whom the declarant was likely to be truthful. *See United States v. Layton*, 855 F.2d 1388, 1405 (9th Cir.1988) (*"Layton II"*).

▮ Applying these factors, the district court concluded Helmecy's remarks were reliable. We agree. (1) The conversation was between friends at Salgado's home and there is nothing to suggest Helmecy's remarks were involuntary. (2) Although the conversation occurred some time after the substantive offenses, it was contemporaneous with the conspiracy to obstruct justice. (3) Helmecy's remarks amounted to a confession of crime, a factor "especially important" under *Layton I*, 720 F.2d at 561; *see also Candoli*, 870 F.2d at 510. (4) They were corroborated by other evidence of record—Holland identifies no significant discrepancy between record evidence and the statements, though he notes Helmecy's prior protestations of innocence to law enforcement officials. (5) Helmecy's remarks were purportedly based on personal knowledge. (6) They were largely spontaneous, although elicited in part by Salgado. And, finally, (7) Helmecy had no reason to lie to Salgado, a co-conspirator whom he knew to have personal knowledge of the matters discussed.

No factor identified in *Layton II*, 855 F.2d at 1406, as suggesting unreliability was present: (1) The declarant was not in custody; (2) the circumstances did not suggest the declarant sought to curry favor with law enforcement officials; (3) the statement was not erroneous in any significant respect; and (4) the statement did not amount to blame-shifting. Holland argues the circumstances "encouraged [Helmecy and Salgado] to blame their difficulties on Holland." However, as noted, Salgado was a trusted co-conspirator whom Helmecy knew to possess personal knowledge of the events discussed, and Helmecy freely admitted his own misconduct.

Admission of the tape did not violate Holland's rights under the confrontation clause.

### C.

The tape records a casual, rambling conversation more than 90 minutes in length. Although portions of the conversation were admissible under Fed.R.Evid. 804(b)(3), much of the tape was irrelevant. Holland argues the failure to redact the tape was error, citing *United States v. Lilley*, 581 F.2d 182, 187–88 (8th Cir.1978).[3]

▮ Although Holland objected to the admission of the tape as a whole, the record reflects no objection sufficient to inform the district court that Holland also objected to failure to redact the tape.[4]

---

**3.** The government suggests Holland invited this error and is therefore barred from complaining of it under *United States v. Alexander*, 695 F.2d 398, 402 (9th Cir.1982). However, the statement on which the government relies occurred off the record. *See United States v. Arizona*, 214 F.2d 389, 392–93 (9th Cir.1954) (court may not consider non-record material); *United States v. Beliard*, 618 F.2d 886, 888 (1st Cir.1980) (same).

**4.** Holland cites the transcript of the hearing on his motion for bail pending appeal. This transcript does not reflect matters before the trial court when the challenged decision was made. *See Kirshner v. Uniden Corp.*, 842 F.2d 1074, 1077 (9th Cir.1988) (striking from record on appeal papers filed in district court after entry of judgment). The very purpose of the contemporaneous objection rule is to give the court notice of a specific objection *before* an evidentiary ruling. *See* Fed.R.Evid. 103(a)(1) and the accompanying Advisory Committee notes.

Holland's blanket objection to the admission of the tape does not preserve an objection to failure to redact the tape. *See* Fed.R.Evid. 103(a)(1) (objection must state "the specific ground of objection"); *Lonergan v. United States*, 95 F.2d 642, 646 (9th Cir.1938); *United States v. Gentile*, 525 F.2d 252, 259 (2d Cir.1975) (Friendly, J.); *see also* 1 J. Wigmore, Wigmore on Evidence § 18 at 823–24 (Tillers rev. ed. 1983).

■ Reversal for plain error would not be appropriate. "Reversal of a criminal conviction on the basis of plain error is an exceptional remedy, which we invoke only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *United States v. Bordallo*, 857 F.2d 519, 527 (9th Cir.1988) (internal quotation omitted). In light of the copious evidence of Holland's guilt, and the relatively small part of the statement Holland identifies as improperly admitted, we conclude there was no "miscarriage of justice" which alone would justify relief.

### II.

■ Appellants argue the district court's instruction on the elements of 42 U.S.C. § 408(g)(2) was erroneous because it permitted the jury to convict for conduct "which neither defrauds the government or at least detrimentally [a]ffects the government in some way."

The plain language of 42 U.S.C. § 408 refutes appellants' contention.[5] Nothing in the text suggests Congress intended to protect only the government from the deceptive misuse of social security numbers. Nor does anything in the legislative history support that view. *See* H.R.Conf.Rep. No. 409, 97th Cong., 1st Sess. 15, *reprinted in* 1981 U.S.Code Cong. & Admin.News 2681,

2687–88. Other circuits have reached this same conclusion. *See United States v. Darrell*, 828 F.2d 644, 647 (10th Cir.1987) (section 408(g)(2) applied to bank fraud); *United States v. Bales*, 813 F.2d 1289, 1297 (4th Cir.1987) (same).

Since Congress' intent to reach any deceptive misuse of a social security number is clearly expressed, appellants' reliance on the rule of lenity is misplaced. *See Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). The clear statutory purpose to reach beyond the scope of common law fraud also makes unavailing appellants' citation of *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (interpreting mail fraud statute as limited to interference with property rights).

### III.

■ 26 U.S.C. § 7206(1) imposes a penalty upon: "Any person who—(1) ... Willfully makes and subscribes a return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter." Appellants contend that to be a "material matter," the amount by which unreported income exceeds reported income must be "substantial," and that the government failed to prove a substantial amount was omitted.

Appellants rely on a statement in a Third Circuit opinion that "it was not necessary [in a prosecution under § 7206(1)] that the government prove the exact amounts of unreported income by the defendants. It is enough if the prosecution shows that a substantial amount of income was not reported." *United States v. Wilson*, 601 F.2d 95, 99 (3d Cir.1979) (citation omitted).

---

**5.** 42 U.S.C. § 408 provides in relevant part:

Whoever ... (g) ... *for the purpose of obtaining anything of value from any person, or for any other purpose*—... (2) with intent to deceive, falsely represents a number to be the social security account number assigned by

the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person ... shall be guilty of a felony.

(emphasis added).

The issue before the Third Circuit was the relevance of a variance between the amount of unreported income alleged in the indictment and the amount proved at trial. The court had no occasion to consider whether the unreported amount must be "substantial" in itself. We follow those circuits that have focused on this issue and have concluded that any failure to report income is material. *See United States v. Greenberg*, 735 F.2d 29, 31–32 (2d Cir.1984) (unreported income producing underpaid tax of $48 was material); *United States v. Hedman*, 630 F.2d 1184, 1196 (7th Cir.1980) ("false statements relating to gross income, irrespective of amount, constitute a material misstatement in violation of Section 7206(1)"); *United States v. Young*, 804 F.2d 116, 119 (8th Cir.1986) (omission of information necessary to compute income is material); *United States v. Gaines*, 690 F.2d 849, 858 & n. 16 (11th Cir.1982) (§ 7206(1) does not require "substantial misstatement" of gross income).

This approach is consistent with the statutory text and with precedent. *See United States v. Marabelles*, 724 F.2d 1374, 1380 (9th Cir.1984) ("The existence of a tax deficiency is not an element" of § 7206(1).) Any concern that trivial mistakes will be prosecuted is obviated by the stringent requirement of specific intent to violate the law. *Id.; United States v. Bishop*, 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed. 2d 941 (1973).

AFFIRMED.