35 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth BALL, Defendant-Appellant.
 No. 93-10603.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 10, 1994.
Submission Deferred Aug. 10, 1994.
Resubmitted Aug. 29, 1994.
Decided Sept. 7, 1994.
 
 Before: NORRIS, THOMPSON and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Kenneth Ball appeals his jury conviction for conspiracy to possess or distribute cocaine in violation of 21 U.S.C. Sec. 846. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 DISCUSSION
 
 3
 Ball argues the district court erred in denying his motion to suppress the evidence found in his automobile, because Susie Advincula lacked authority to consent to its search. He does not dispute Advincula's authority to consent to the search of the home she and he jointly occupied.
 
 
 4
 Advincula provided the officers with keys to her own vehicle and to the BMW registered to Ball. Inside the BMW, the officers found documents indicating both Ball and Advincula were insured to drive the car, and a receipt of sale for the BMW made out to Advincula. Although the BMW was registered to Ball alone, the district court did not err in finding Advincula had mutual control over it, and thus could consent to its search. See United States v. Matlock, 415 U.S. 164, 171 & n. 7 (1974).
 
 
 5
 Ball contends he was present during the search, and thus the officers should have asked for his consent. When a third party possessing a sufficient relationship to the place searched consents to a search, however, it is immaterial whether the defendant was asked for his consent, even if he was present at the scene. See United States v. Childs, 944 F.2d 491, 494 (9th Cir.1991).
 
 
 6
 Ball also contends the district court abused its discretion in allowing post-arrest statements he made to be introduced at trial. He contends he was not informed of his rights to remain silent and consult with an attorney before he made the statements. See Miranda v. Arizona, 384 U.S. 436 (1966). The record demonstrates this claim has no merit.
 
 
 7
 Although there was some general discussion between officers and Ball in the police car on the way to the DEA offices, there was no information exchanged, or questions asked, pertaining to Ball's case. Two agents testified at the suppression hearing that after reaching the DEA offices, Ball was given Miranda warnings and said he understood them. Only then was he questioned by the officers about the case. Ball presents no evidence to rebut this testimony. The trial court did not err in admitting Ball's statements.
 
 
 8
 Ball argues the district court erroneously allowed jurors to read transcripts of tape recorded conversations between him and Parris, while the tapes were being played for the jury. We reject this argument.
 
 
 9
 Jurors may read government prepared transcripts to follow tape recordings where the district judge reviews the transcript for accuracy, the agent who participated in the taped conversation testifies to the accuracy of the transcript, and the district judge gives the jury a limiting instruction. See id.; United States v. Turner, 538 F.2d 143, 162 (9th Cir.1975), cert. denied, 423 U.S. 996 (1976).
 
 
 10
 Ball asserts that although the district court gave a limiting instruction, the court did not review the transcripts, and the agent who participated in taping the conversations did not testify to the transcripts' accuracy.
 
 
 11
 A district court's failure to review a transcript, standing alone, is not reversible error. United States v. Booker, 952 F.2d 247, 250 (9th Cir.1991). Because the trial court heard the tapes and read the transcripts at the first trial, any harm from failing to read the transcripts again at the present trial is minimal or nonexistent. Also, Parris, who was a party to the taped conversations, testified to the accuracy of the transcripts. There was adequate foundation for the transcripts. See Fed.R.Evid. 403.
 
 
 12
 Ball points out the court reporter failed to record verbatim the taped conversations. This, however, does not necessarily require reversal. United States v. Doyle, 786 F.2d 1440, 1442 (9th Cir.), cert. denied, 479 U.S. 984 (1986). The jury had the tapes during deliberations, and "had the opportunity to listen to all or any portion of each tape because each was admitted in evidence in its entirety. We presume the jury considered all available evidence in its deliberations." Id. The tapes also are available to us as part of the record on appeal. Id.
 
 
 13
 Ball contends, however, that approximately twenty words on the tapes were not transcribed, and the government twice inserted the word "cocaine" in parentheses in one of the transcripts to explain to the jury that during this conversation Ball and Parris were discussing the sale of narcotics. By adding the words "cocaine," the government informed the jury of the subject of the conversation, rather than allowing the jury to draw its own conclusions.
 
 
 14
 A blanket objection to the tapes due to their alleged "inaccuracy" does not preserve for appeal Ball's specific challenge to the two insertions of the word "cocaine." United States v. Holland, 880 F.2d 1091, 1095 (9th Cir.1989). The record fails to disclose any specific objection by Ball, or a request to redact the transcript to delete the insertion of "cocaine." In this circumstance, we will reverse only for plain error. Id.
 
 
 15
 "Reversal of a criminal conviction on the basis of plain error is an exceptional remedy, which we invoke only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process."
 
 
 16
 Id. at 1095, quoting United States v. Bordallo, 857 F.2d 519, 527 (9th Cir.1988).
 
 
 17
 As in Holland, here there was "copious" evidence of Ball's guilt. Moreover, Parris testified that he used code words during the taped conversations to refer to cocaine. There was no miscarriage of justice and reversal is not required "to preserve the integrity and reputation of the judicial process." Bordallo, 857 F.2d at 527.
 
 
 18
 Ball also contends the district court coerced the jury into returning a guilty verdict by giving an Allen charge. See Allen v. United States, 164 U.S. 492 (1896).
 
 
 19
 In reviewing whether there has been coercion by giving an Allen charge, we consider:
 
 
 20
 (1) the form of the supplemental instruction;
 
 
 21
 (2) the period of deliberations following the instruction;
 
 
 22
 (3) the total time of deliberations; and
 
 
 23
 (4) any other indicia of coerciveness or pressure.
 
 
 24
 See Jiminez, 12 F.3d at 1477; Wanueka, 842 F.2d at 1088.
 
 
 25
 In giving the Allen charge, the trial judge asked the jurors to maintain an open mind, and not to stubbornly adhere to a position without listening carefully to the other jurors and reexamining their views. The judge also twice instructed the jurors not to surrender their sincere convictions in reassessing their positions, and once told the jurors not to "acquiesce in the conclusion of the other jurors." Such cautionary warnings lend support to a conclusion that the Allen charge was not coercive. United States v. Ajiboye, 961 F.2d 892, 894 (9th Cir.1992); United States v. Mason, 658 F.2d 1263, 1268 (9th Cir.1981).
 
 
 26
 Moreover, after they were given the Allen charge, the jury retired to deliberate at 3:37 p.m., and returned a guilty verdict at 4:52 p.m. In the context of this case, one hour and fifteen minutes is not so short a period of time as to raise an inference of coercion. Compare United States v. Bonam, 772 F.2d 1449, 1451 (9th Cir.1989) (no inference of coercion where jury deliberated an hour and thirty minutes after Allen charge), with United States v. Contreras, 463 F.2d 773, 774 (9th Cir.1972) (reversing conviction rendered thirty-five minutes after giving Allen charge). Nor was the period of deliberation after the Allen charge disproportionate to the total time of deliberation, which was a little more than one day. See Jiminez, 12 F.3d at 1478 (one hour and forty-eight minute deliberation after Allen charge not disproportionate to total deliberation time of nine and one half hours); Bonam, 772 F.2d at 1450 (one hour and thirty minute deliberation after Allen charge not disproportionate where total deliberation time a little more than one day).
 
 
 27
 There are no other indicia of coercion or pressure. The court did not inquire into the numerical division of the jury, Jiminez, 12 F.3d at 1478-79, nor mention to the jurors the possible expense of a retrial. See Mason, 658 F.2d at 1267. Nothing in the record would indicate holdout jurors believed the charge was directed specifically at them. See Jiminez, 12 F.3d at 1478-79. The Allen charge was not coercive in nature, and the district court did not abuse its discretion in giving it.
 
 
 28
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3