# SUPREME COURT OF THE UNITED STATES

## GUSTAVO TIJERINA SANDOVAL *v.* TEXAS

### ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF TEXAS

No. 23–5618.　Decided May 13, 2024

The petition for a writ of certiorari is denied.

JUSTICE JACKSON, with whom JUSTICE SOTOMAYOR joins, dissenting from the denial of certiorari.

Criminal defendants have a "fundamental righ[t]" "to personal presence at all critical stages of the trial." *Rushen* v. *Spain*, 464 U. S. 114, 117 (1983) (*per curiam*). We have long held that *voir dire*—the moment that "represents jurors' first introduction" to the facts of a case—is one such stage. *Gomez* v. *United States*, 490 U. S. 858, 873–874 (1989). In this capital case, however, the Texas Court of Criminal Appeals (TCCA) determined that a defendant had no due process right to attend "special venire" proceedings held prior to *voir dire*, during which a judge preevaluated potential jurors who were summonsed specifically for that case and given information about the defendant and the allegations against him. The TCCA's ruling raises a significant and certworthy question about whether criminal defendants have a due process right to be present in such circumstances. In my view, the answer is yes, and this Court should have granted the petition for certiorari to furnish that important holding.

I

Petitioner Gustavo Tijerina Sandoval was charged in Texas with capital murder. Under Texas law, prospective jurors are typically first assembled into a general, non-case-specific jury pool; only after members of that pool are individually qualified for service based on certain statutory criteria are they then assigned to specific cases for *voir dire*.

See *Jasper* v. *State*, 61 S. W. 3d 413, 422–423 (Tex. Crim. App. 2001). In capital cases, however, Texas trial courts may summon a "special venire"—a panel of prospective jurors who are called for a particular trial. Tex. Code Crim. Proc. Ann., Art. 34.01 (Vernon 2006).

That is what happened here. Prospective jurors were mailed a summons along with a detailed questionnaire that included case-specific information such as the parties' identities, the facts of the alleged offense, and the State's intention to seek the death penalty. From February to May 2018, the trial court then summonsed three special venires to prequalify potential jurors for this case. During those proceedings, the judge explained the statutory prerequisites for jury service and described grounds for exemption from service. She also had colloquies with the potential jurors and disqualified many of them.

Tijerina Sandoval was not present for any of those qualification hearings. 665 S. W. 3d 496, 509–510 (Tex. Crim. App. 2022). Moreover, most of the exchanges between the prospective jurors and the court troublingly took place entirely off the record, without any recording or transcription, leaving little trace of what was said, who was excused, or why. *Id.*, at 510.

After being subsequently tried and convicted, Tijerina Sandoval maintained on appeal that it was legal error for the trial court to hold the special venire qualification proceedings outside of his presence. *Id.*, at 511. But the TCCA disagreed, concluding that "[w]hether the prospective juror is assigned first to the central jury room or to a special venire, a preliminary inquiry into his general qualifications, excuses, and exemptions is not the sort of proceeding that needs to be conducted in the defendant's presence" in order to comport with due process. *Id.*, at 511–512.

## II

The TCCA's categorical distinction between a "preliminary inquiry" into juror qualifications in the context of a special venire, on the one hand, and standard *voir dire* proceedings, on the other, stands in deep tension with a criminal defendant's "right to personal presence at all critical stages of the trial." *Rushen*, 464 U. S., at 117; see *United States* v. *Gagnon*, 470 U. S. 522, 526 (1985) (*per curiam*). The baseline is well established: A "defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Id*., at 526 (quoting *Snyder* v. *Massachusetts*, 291 U. S. 97, 105–106 (1934)). This Court has also already determined that *voir dire* proceedings qualify as such a moment. *Gomez*, 490 U. S., at 873. *Voir dire* is typically the point in which prospective jurors are made privy "to the substantive factual and legal issues in a case," *id*., at 874, and it "is the primary means by which a court may enforce a defendant's right to be tried by a jury free from . . . predisposition about the defendant's culpability," *id*., at 873. And, because the "atmosphere of the *voir dire* . . . may persist throughout the trial," a defendant's pretrial opportunity to "scrutinize" the "gestures and attitudes of all participants to ensure the jury's impartiality" is essential to the fairness of the entire proceeding. *Id*., at 875.

To be sure, we have also distinguished between *voir dire* and a mere "administrative empanelment process" that occurs before jurors have been assigned to a case or told anything about it on the grounds that the latter does not ordinarily carry the same significant implications for the fairness of the trial. *Id*., at 874. Thus, at bottom, the legal question here is whether Texas's "special venire" qualification sessions are sufficiently similar to standard *voir dire* proceedings to implicate the defendant's due process right to be present.

I believe that they are. Just as with *voir dire*, "a fair and just hearing would be thwarted by" a defendant's absence from the special venire proceedings. *Snyder*, 291 U. S., at 108. To start, even before they arrived at the courthouse, the potential jurors in this case had already been informed of the parties' identities, the allegations against Tijerina Sandoval, and the fact that the State sought the death penalty—critical facts about this case in particular. Then, on the day they were brought in for questioning, the prospective jurors came before the judge, where they could react to that case-related information in the context of the court's assessment of their qualifications and ability to serve. Texas's special venire hearings thus shared many of the key qualities that make the defendant's presence at *voir dire* proceedings constitutionally indispensable. See *Gomez*, 490 U. S., at 873–875.

Moreover, given this reality, it is simply not the case that Tijerina Sandoval "could have done nothing" and would not "have gained anything by attending" these special venire proceedings. *Gagnon*, 470 U. S., at 527. Because most of these proceedings took place off the record, there is no full account of what was said. But what is known of the facts here plainly demonstrates why Tijerina Sandoval's presence might have mattered.

In one of the few transcribed special venire exchanges, one prospective juror stated: "In this case, I feel uncomfortable." 50 Reporter's Record in No. AP–77,081 (Tex. Crim. App.), p. 20. It is entirely possible that that particular juror was predisposed to look unfavorably at the facts of the case or at Tijerina Sandoval himself. But the defense could not follow up on that comment, since Tijerina Sandoval was not present for those prequalification proceedings and was thus presumably unaware of that remark. There is no evidence that the trial court informed Tijerina Sandoval of this panel member's comment before *voir dire*. Nor is it clear whether that juror was ever asked to explain the reasons for the

stated discomfort, either during the special venire proceedings or subsequently during *voir dire*. It is also indisputable that a prospective juror's discomfort "[i]n this case" is the kind of information that defense counsel would have probed at length in subsequent questioning, because such an inquiry might result in the juror's disqualification for cause—saving the defendant a valuable peremptory strike.

The fact that Texas's special venire process is available only in capital cases, which often receive abnormally extensive media coverage, makes matters worse. In those circumstances, it is all the more likely that those prospective jurors who are called for a special venire prequalification process may have seen reporting on the case and formed opinions before trial. Such media coverage might also lead prospective jurors to reveal a "predisposition about the defendant's culpability" at the earliest opportunity—*i.e.*, during the special venire proceedings. *Gomez*, 490 U. S., at 873.

Again, this case further illustrates the point. During Tijerina Sandoval's trial, the judge expressly noted that "the media has had [this case] publicized so much." 58 Reporter's Record in No. AP–77,081 (Tex. Crim. App.), p. 35. And, indeed, some of the prospective jurors disclosed on their questionnaires that they had seen media coverage about the case. That pretrial coverage was often highly prejudicial, suggesting, for instance, that Tijerina Sandoval might have been associated with Mexican cartels. Yet, Tijerina Sandoval was not present during the court's initial vetting of the prospective jurors, despite their likely exposure to this coverage and preexisting knowledge of the case.

\*  \*  \*

Because this Court has already recognized the due process right of a defendant to be present at *voir dire*, it seems to me self-evident that a defendant's presence for the first

court appearance of prospective jurors assembled specifically for his case likewise bears on "the fulness of his opportunity to defend against the charge." *Snyder*, 291 U. S., at 105–106. But here, without even the benefit of a full record of the exchanges between the trial court and prospective jurors, the TCCA held categorically that a defendant in Tijerina Sandoval's position had no right to be present during the court's preliminary assessment of the jury pool. 665 S. W. 3d, at 511–512.

Other state and federal courts have held otherwise. They have recognized a defendant's right to be present during preliminary proceedings where potential jurors have been exposed to the facts of a case or are subject to being excused for case-specific reasons.* For present purposes, that means the lower courts diverge as to whether a criminal defendant has a due process right to attend proceedings like the qualification hearings here. That debate involves an issue of clear constitutional and practical significance that this Court should have granted certiorari to resolve. Therefore, I respectfully dissent.

––––––––––

*See, *e.g.*, *United States* v. *Bordallo*, 857 F. 2d 519, 522–523 (CA9 1988) (right to presence applied in pre-*voir dire* proceedings where "prospective jurors knew which specific case they would hear, and some were excused due to factors related to" the case); *State* v. *Irby*, 170 Wash. 2d 874, 880–884, 246 P. 3d 796, 799–801 (2011) (right applied when judge exchanged email with counsel about excusing jurors, who had filled out questionnaires about that case, based on their "general qualifications" and "their fitness to serve as jurors in this particular case"); *State* v. *Wilson*, 323 Ore. 498, 504–505, 918 P. 2d 826, 830–831 (1996) (right applied to pre-*voir dire* preliminary orientation during which potential jurors filled out lengthy questionnaires and were informed of the facts of the case and the parties' identities).