**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James Bowden BEARD, Defendant–
Appellant.**

**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**James Bowden BEARD, Defendant–
Appellee.**

Nos. 97–10353, 97–10410.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1998.

Decided Nov. 23, 1998.

Robert A. Altman, Washington, DC, for Defendant–Appellant in No. 97–10353 and Defendant–Appellee in No. 97–10410.

John P. Leader, Assistant United States Attorney, Tucson, AZ, for Plaintiff–Appellee in No. 97–10353 and Plaintiff–Appellant in No. 97–10410.

Before: BRUNETTI, TASHIMA, and GRABER, Circuit Judges.

TASHIMA, Circuit Judge:

James Bowden Beard appeals from his conviction for money laundering and various related offenses. Beard contends that the court erred in denying his motion for a mistrial based on violations of Fed.R.Crim.P. 23(b) and 24(c). Although the district court did not abuse its discretion in finding just cause to remove two jurors, the court erred in substituting two alternate jurors in violation of Rule 24(c). We therefore reverse and remand for a new trial.

## I. BACKGROUND

Beard was indicted on money laundering and related charges. His jury trial began on September 4, 1996, and concluded on October 10, 1996. On October 8, 1996, during closing arguments, the court received a note from Juror No. 8, stating:

> Please, prevent [Juror No. 1] from being foreman. She has been making statements about how ridiculous the case is and has said to me to make her foreman because she will take care of deliberations quickly. She may have made the second statement to other jurors. This is whether or not I am selected to deliberate.

The defendant immediately moved for a mistrial and counsel stated: "[I]t's apparent from this that the jurors have already been discussing among themselves the facts of the case." After questioning both jurors about the incident and the entire panel in general, the court decided that the jury had not been improperly influenced and allowed closing arguments to continue. Beard objected to excusing both jurors, as well as to excusing only Juror No. 1, and sought a mistrial. The court later denied the government's motion to excuse the two jurors because there was no evidence that Juror No. 1 had expressed an opinion regarding guilt or innocence and denied the defendant's motion for a mistrial.

■ At the end of the day, after closing arguments had been completed and the jury had been charged, the court dismissed the two alternate jurors, but did not excuse them from service.[1] The following morning, shortly after the jury began deliberating, the court received another note from Juror No. 8, stating, "[Juror No. 1] is shaking her hand at me and calling me a bitch." The court instructed the jury to stop deliberating and questioned Juror No. 8 about the incident. Juror No. 8 stated that Juror No. 1 had yelled at her and accused her of lying, and that she just wanted Juror No. 1 to stop yelling at her and calling her names. She further stated, "I said bury it and she said, no, I will not."

The court then questioned Juror No. 1, who stated, "I am very well humiliated, very distraught and very embarrassed.... I felt raped, because I did not make a decision, and I never did that, and I did not sleep last night because of it." In response to the court's query, Juror No. 1 stated, "I am totally focused on the case. I would like to participate in this opportunity." She later repeated that she would be able to concentrate on the evidence and decide the case based on the evidence.

After Juror No. 1 left, the government urged that because Juror No. 1 was obviously distraught and there was no way of knowing who was telling the truth, the court should dismiss both jurors and call the two alternates. Beard responded that personality conflicts are normal on juries and that both women asserted that they could concentrate on the case. The court concluded that there was good cause to excuse both jurors, instructed the jury to stop deliberating, and called the alternates, noting that this was "over the defense objection." After both jurors had been dismissed, the defendant again moved for a mistrial, giving as reasons: (1) Rule 24(c)'s requirement that alternate jurors be discharged after the jury retires to consider the verdict, see Fed.R.Crim.P. 24(c); (2) the probability that the entire jury had been contaminated; and (3) the discharged jurors' indications that they were able to perform their duties.

The court denied the motion for a mistrial and, without the defendant's consent, substituted the two alternates, instructing the jury to choose a foreperson again and to begin deliberations anew. A guilty verdict was returned in due course and, on January 28,

---

1. The court, instead, asked them to continue to follow the court's admonition and to remain on "standby" until the jury had been discharged.

We know of no rule that authorizes such a practice, absent the consent of the parties.

1997, the court denied Beard's motion for a new trial.

## II. STANDARD OF REVIEW

 The district court's decision to excuse a juror for just cause, pursuant to Rule 23(b), is reviewed for an abuse of discretion. *United States v. McFarland*, 34 F.3d 1508, 1511 (9th Cir.1994). When the defendant has made a timely objection to an error, the harmless error standard generally applies, and the government bears the burden of proving that the error was not prejudicial. Fed.R.Crim.P. 52(a); *see United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We review questions of law de novo. *Allen v. Shalala*, 48 F.3d 456, 457 (9th Cir.1995).

## III. DISCUSSION

The district court's decision to excuse two jurors and then substitute the two alternates after deliberations had begun implicates Rules 23(b) and 24(c) of the Federal Rules of Criminal Procedure. *See McFarland*, 34 F.3d at 1513. Rule 23(b) authorizes the court to excuse one or more jurors, if the court finds that "just cause" exists for the dismissal.[2] Rule 24(c) requires that all alternates who have not replaced regular jurors be discharged after the jury retires to deliberate.[3]

### A. Removal of Jurors for Just Cause

 Beard contends that there was no just cause for dismissing either juror. Although the court gave reasons for removing Juror No. 1, it did not give any reason for removing Juror No. 8.

The district court did focus on Juror No. 1's emotional state in its decision to remove both jurors. It stated: "I am concerned about juror number one who was literally crying here ... and who indicated that she had not slept all last night and that it was the most humiliating thing to ever happen to her ... which tells me she may not have perspective on this." The court went on to state, however, that, "while most of it focuses on jury [sic] number one, undoubtedly because someone apparently fueled the names when one and eight were there this morning against—to draw number eight into it, that other jurors are aware of it, and I think that there is good cause to excuse both." The court later stated, "It was very difficult to unravel exactly what the dynamics were between the two, but certainly it was, I think a major distraction to the deliberations of the jury and seriously distracted their attention from consideration of the case before them." It is apparent, therefore, that the court was concerned with the effect of the overall situation on the jury's ability to concentrate on the case.

 Although "just cause" generally focuses on sickness, family emergency, or juror misconduct, it "embraces all kinds of problems—temporary as well as those of long duration—that may befall a juror during jury deliberations." *Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1452 (9th Cir.1995) (internal quotations and citation omitted), *cert. denied*, —— U.S. ——, 116 S.Ct. 1847, 134 L.Ed.2d 948 (1996); *see also McFarland*, 34 F.3d at 1512 ("While appellant correctly asserts that 'just cause' encompasses primarily physical incapacity or absence due to religious observance, the excusing of a juror who had previously advised the court and counsel of his lengthy vacation plans does not constitute an abuse of discre-

---

2. The rule provides:

Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any just cause after trial commences. Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.

Fed.R.Crim.P. 23(b).

3. The rule provides, in relevant part:

Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties.... An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict....

Fed.R.Crim.P. 24(c).

tion."). The decision to excuse a juror is committed to the district court's discretion and we must affirm "unless we are left with the definite and firm conviction that the court committed a clear error of judgment in reaching its conclusion after weighing the relevant factors." *United States v. Egbuniwe,* 969 F.2d 757, 761 (9th Cir.1992) (internal quotations omitted). Because the district court was in the "best position" to evaluate the jury's ability to deliberate, and the incident clearly was affecting the jury, the court did not abuse its discretion in finding just cause to remove both jurors. *United States v. Ross,* 886 F.2d 264, 267 (9th Cir.1989).

Before the court decided to excuse the jurors, Beard argued that both jurors had indicated that they could set aside their "personality problems" and that the problems would not affect their ability to make a decision based on the evidence. However, "[a] juror's assurance that he or she can render a fair and impartial verdict is not dispositive." *Egbuniwe,* 969 F.2d at 762. The court observed both jurors' demeanor and testimony and was in the best position to determine whether they would be able to deliberate adequately. *See Ross,* 886 F.2d at 267. Its decision to excuse them was not an abuse of discretion.

### B. Substitution of Alternate Jurors

■ Beard contends that the court's decision to substitute the two alternates after deliberations had begun was prejudicial error. Under Rule 24(c), a criminal defendant has the statutory right not to have jurors substituted without his or her consent, once deliberations have commenced. *McFarland,* 34 F.3d at 1511. The district court, therefore, erred in making those substitutions. The government argues, however, that Beard did not make a timely objection to the Rule

24(c) violation, citing *United States v. Gomez–Norena,* 908 F.2d 497 (9th Cir.1990). *Gomez–Norena* is inapposite because that case dealt with whether an objection to the admission of evidence was timely and specific pursuant to Fed.R.Evid. 103(a)(1). *Id.* at 500.

When the district court decided to excuse the two jurors and to substitute the alternates, it acknowledged that "this will be over the defense objection." It is unclear whether "this" refers only to the court's conclusion that there was good cause to excuse the jurors, as the government contends, or to the entire process of dismissing the jurors and calling the alternates. Later, however, the defendant's counsel stated that she wanted to "supplement the previous record and move once again for a mistrial," citing the violation of Rule 24(c)'s requirement that alternate jurors be discharged after the jury retires to consider the verdict. The court asked whether counsel wanted to proceed with ten or eleven jurors, but the only remedy that she (defense counsel) sought was a mistrial, based on the probability that the entire jury had been contaminated and on the disqualification of the two jurors despite their indication that they were able to serve. The court then denied the motion for a mistrial, reasoning that it had discretion to proceed with a jury of fewer than twelve and that, under *McFarland,* it was harmless error to substitute the alternates, absent a demonstration of inherent prejudice. Thus, although the basis for the court's earlier acknowledgment of Beard's objection may have been unclear, we conclude that Beard did object to the Rule 24(c) violation in a timely manner.

■ When a defendant timely objects to an error, the error generally is reviewed for harmlessness, and the government bears the burden of proving lack of prejudice.[4] Fed.

---

4. Relying entirely on its assumption that Beard did not timely object, the government, citing *McFarland,* confines its argument to defendant's failure to demonstrate plain error. In contrast to the instant case, however, the defendant in *McFarland* did not object to the substitution of the alternate juror. Thus, in that case, the error was reviewed under Rule 52(b), rather than 52(a). Because this is not a plain error case, the government's, and the district court's, reliance on *McFarland* is misplaced.

Moreover, the most important reason for finding that the error was harmless in *McFarland* was that Rule 23(b) would have permitted the jury to deliberate with only 11 jurors, so that the alternate juror's vote did not make any difference in the outcome. *See McFarland,* 34 F.3d at 1515. Under Rule 23(b), even absent a stipulation, the court has the discretion to proceed with 11 jurors, if necessary. The error in this case was the district court's assumption that it could proceed with a jury of fewer than 11, absent a stipulation from the parties.

R.Crim.P. 52(a); *Olano,* 507 U.S. at 734, 113 S.Ct. 1770. Rule 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Because the burden is on the government, "Rule 52(a) precludes error correction only if the error 'does *not* affect substantial rights.'" *Olano,* 507 U.S. at 735, 113 S.Ct. 1770.

■■■■■■ Whether an error is subject to harmless error analysis depends on whether the reviewing court determines that the error is a "classic 'trial error.'" *United States v. Annigoni,* 96 F.3d 1132, 1143 (9th Cir. 1996) (en banc) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). A trial error is one "which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante,* 499 U.S. at 307–08, 111 S.Ct. 1246. By contrast, structural errors are "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards," because they "affect[ ] the framework within which the trial proceeds, rather than [being] simply an error in the trial process itself. Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Id.* at 309–10, 111 S.Ct. 1246 (internal quotations and citation omitted). Structural errors require automatic reversal, because "the impact of the error on the jury's performance of its duties cannot be reviewed." *United States v. Noushfar,* 78 F.3d 1442, 1445 (9th Cir.1996) (quotations and citation omitted), *amended by* 140 F.3d 1244 (9th Cir.1998).

■■■■■■ In *Annigoni,* we noted that the divergence between trial and structural er-

rors was a "spectrum," rather than a rigid dichotomy. *Annigoni,* 96 F.3d at 1144. In this case, however, we need not decide where along that spectrum the district court's unconsented-to substitution of jurors after deliberations had begun falls. For, whether we apply the harmless error rule or conclude that, because of the type of error involved, it cannot be applied, the result is the same. It has not been shown that the error was harmless. Accordingly, in No. 97–10353, we reverse defendant's conviction and remand for a new trial,[5] and dismiss the appeal in No. 97–10410.[6]

**REVERSED and REMANDED; cross-appeal DISMISSED.**

---

5. There is no double jeopardy bar to a new trial in this case because, first, Beard moved for a new trial, and second, the excusal of the two jurors was not an abuse of discretion and, thus, constituted a proper ground for a mistrial. *See United States v. McKoy,* 78 F.3d 446, 449 (9th Cir.) (holding that a retrial was not barred where the mistrial was caused by "manifest necessity"),

*cert. denied,* —— U.S. ——, 117 S.Ct. 67, 136 L.Ed.2d 28 (1996); *United States v. Sammaripa,* 55 F.3d 433, 434 (9th Cir.1995) (same).

6. Because of our disposition, we need not and do not reach Beard's sentencing claim or the government's cross-appeal.