**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOE ANGEL REYES,
*Defendant-Appellant*.

No. 12-50386

D.C. No.
2:11-cr-00675-JAK-1

OPINION

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted
March 4, 2014—Pasadena, California

Filed September 4, 2014

Before: Jay S. Bybee, Carlos T. Bea,
and Morgan Christen, Circuit Judges.

Opinion by Judge Bybee

# SUMMARY[*]

## Criminal Law

The panel affirmed a conviction and sentence for attempted bank robbery in a case in which the defendant contended that the district court violated his right to be present at trial by excluding him from certain side bar exchanges during jury selection.

The panel held that under Fed. R. Crim. P. 43, the defendant has a right to be personally present during voir dire of prospective jurors, and that the district court violated Rule 43 when it questioned Juror H outside of the defendant's earshot. The panel held that the error was harmless because the evidence of the defendant's guilt was overwhelming.

The panel held that meetings between counsel and the court at which the participants discuss whether jurors should be excused for cause, exercise peremptory challenges, or decide whether to proceed in the absence of prospective jurors are all examples of "a conference or hearing on a question of law" from which the defendant may, under Fed. R. Crim. P. 43(b)(3), be excluded at the district court's discretion. The panel therefore held that the district court did not violate Rule 43 when it excluded the defendant from seventeen other side bar exchanges.

The panel held that the defendant's exclusion from the side bar conference at which the district court conducted voir

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

dire of Juror H did not violate the defendant's constitutional right to be present because the defendant's presence would have been "but a shadow"; it was not an instance where the defendant's absence might frustrate the fairness of the proceedings. The panel held that the district court's decision to exclude the defendant from the seventeen other side bar exchanges – where the attorneys argued that jurors should be excused for cause, exercised peremptory challenges, and discussed whether to proceed in the absence of some prospective jurors – was likewise consistent with the Constitution.

The panel concluded that the district court did not impose a substantively unreasonable sentence.

## COUNSEL

Matthew B. Larsen (argued), Deputy Federal Public Defender; Sean K. Kennedy, Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

Michael Dore (argued), Assistant United States Attorney, Violent and Organized Crime Section; Robert E. Dugdale, Assistant United States Attorney, Chief, Criminal Division; Andre Birotte, Jr., United States Attorney, United States Attorneys' Office, Los Angeles, California, for Plaintiff-Appellee.

**OPINION**

BYBEE, Circuit Judge:

Joe Angel Reyes appeals his conviction of one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a). Reyes raises two arguments on appeal. First, he contends that the district court violated his right to be present at trial by excluding him from certain side bar exchanges during jury selection. Second, he asserts that his sentence is substantively unreasonable. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

I.

A. *Jury Selection*

A federal grand jury returned an indictment charging Reyes with two counts of bank robbery and two counts of attempted bank robbery in violation of 18 U.S.C. § 2113(a). The district court conducted voir dire on March 6, 2012. Reyes was present in the courtroom with his attorneys. After questioning the first twelve jurors in open court, the district court conferred with the attorneys representing Reyes and the government at side bar. The court began by asking Reyes's attorney, John Littrell, whether any jurors should be excused for cause. After the lawyers discussed which jurors should be excused, Littrell requested that Reyes himself be permitted to participate at the side bar conferences with the lawyers. The court denied the request, advising Littrell that "If you wish to confer with your client while we're here, you can do so" and explaining that "I've never had a client participate in a side bar on jury selection because I count on the lawyers that you know what you're doing to communicate with your client and

get the data and convey it to me." The court then reiterated to Littrell that "If in the course of what we're discussing something comes up that you want to talk to him about at anytime, please let me know." Littrell declined to confer with Reyes at that point. At the next side bar conference, the court told defense counsel, "I know your client is not here and–you have a standing objection on that."

The district court held a total of eighteen side bar conferences with the attorneys during the course of jury selection. Consistent with the court's decision, Reyes remained at the table during each exchange rather than joining the lawyers at the bench. On four occasions, Reyes's attorneys asked for a moment to confer with Reyes, and each time the court granted the request and confirmed that they were welcome to speak with their client before proceeding.

At seventeen of the eighteen side bar conferences, the attorneys either discussed whether a juror should be excused for cause, exercised a peremptory challenge, or conversed about whether voir dire should proceed even though two of the prospective jurors had yet to return from lunch. At no point during these seventeen conferences did the attorneys or the court speak with a prospective juror or anyone else.

During one of the eighteen side bar exchanges, the court briefly questioned a prospective juror, who we will refer to as Juror H, outside of Reyes's earshot. As part of its standard line of questioning, the district court asked Juror H in open court whether any of the matters discussed "raises a question with you as to your ability to be fair and impartial." Juror H answered "Yes, I have a personal issue," and accepted the court's invitation to speak privately. The court then questioned Juror H at the bench with the lawyers for both

Reyes and the government present. Juror H informed the court that a woman with whom her son had a child had robbed nine banks about five years earlier. Juror H said "I don't know if I can be fair" because she thought the woman should have been punished more harshly than she was for robbing the banks. The court again asked Juror H whether she could fairly evaluate the case as a juror and she responded "I'm not sure" and "I can't say." Next, the court explained that everyone has been shaped by their prior experiences, and Juror H replied "That's true" and "I don't want to be unfair." The court instructed Juror H to further consider whether she could be fair and sent her back to her seat. The attorneys for both Reyes and the government recommended that Juror H's status as a juror be resolved immediately. The court then had the following exchange with Juror H in open court:

> The Court: Ms. [H], we spoke at the side; and I asked you to reflect on what we talked about. Have you had enough time to do that, or do you need more time?
>
> Juror H: I think I'm okay with the time.
>
> The Court: What's your present thinking? Can you be fair and impartial in this case?
>
> Juror H: It's like, what is fair?
>
> The Court: Well, fair means that you listen to the evidence and evaluate it and you do so in an impartial way.
>
> Juror H: Yes, I believe so.

After the exchange between the court and Juror H, Reyes's attorney exercised a peremptory challenge on a different prospective juror. Neither party excused Juror H, who served on the jury that convicted Reyes of attempted bank robbery.

## B.  *Trial*

At trial, the government adduced evidence that Reyes had robbed two banks and attempted to rob two others between September 24, 2010 and October 7, 2010. A teller at a Wells Fargo bank branch in Los Angeles testified that, on September 25, 2010, Reyes approached the counter where he was working and handed him a note. The note, which the government introduced into evidence, said "Don't Be a Hero—this is a Bank Robbery[.]  I have a gernade [sic] and if you [expletive] up I'll pull it!!  trust & Believe[.]  I am a Psycho Killer."  The teller testified that when he turned to get his manager's attention, Reyes left the bank without receiving any money.  The government introduced surveillance photographs from the bank's cameras depicting the event, and the teller confirmed that he had previously identified Reyes as the man who passed him the note.  The government introduced similar evidence from the other three banks that it accused Reyes of robbing or attempting to rob—namely, the testimony of bank employees who identified Reyes, surveillance footage from the banks, and demand notes allegedly used by Reyes.

Detective Veronica Conrado testified about interviewing Reyes on the night that he was arrested.  The government introduced an audio recording of the interview, during which Reyes described committing the four completed and attempted bank robberies.  Conrado testified that Reyes confirmed he was the man pictured in two bank surveillance

photos and that he wrote two of the demand notes produced by the detectives.

After five hours of deliberations, the forewoman informed the district court that the jury was deadlocked on three of the four counts. At the urging of defense counsel, the court declined to ask the jury to continue deliberating. The jury returned a verdict finding Reyes guilty on count two of the indictment, which is attempted robbery of the Wells Fargo bank branch in Los Angeles on September 25, 2010. The court declared a mistrial on the other count of attempted bank robbery and the two counts of completed bank robbery. The court later entered judgment on the jury's guilty verdict on count two of the indictment.

## C. *Sentencing*

Before he was indicted in this case, Reyes pled guilty in California state court to the second-degree robbery of a shoe store that occurred about two weeks after the attempted bank robbery at issue here. He was sentenced to a term of fifteen years in state prison, which he was serving at the time he was sentenced in this case.

The presentence report calculated a total offense level of twenty-four and a criminal history category of VI, resulting in a sentencing range of 100–125 months. The probation officer did not identify any factors warranting a departure or variance from the Guidelines range. At the sentencing hearing, Reyes's counsel requested a sentence of 100 months' imprisonment, with twelve months to run consecutive to the fifteen-year state sentence. The government requested 125 months' imprisonment, with fifty months to run consecutive to the state sentence. The district court imposed a sentence of

125 months, with thirty-six months to run consecutive to the state sentence, along with three years of supervised release.

In reviewing the factors specified in 18 U.S.C. § 3553(a), the court emphasized that Reyes had exhibited a "long pattern of criminal conduct" and had repeatedly committed additional crimes soon after being released from state custody.  It also stated that the attempted bank robbery involved a threat of violence because the note that Reyes passed to the Wells Fargo teller said that he had a grenade.

## II.

We first address Reyes's contention that the district court impermissibly excluded him from eighteen side bar exchanges during jury selection.  Although we review the district court's conduct of voir dire for abuse of discretion, *United States v. Sherwood*, 98 F.3d 402, 407 (9th Cir. 1996), questions of law that arise during the course of voir dire are reviewed de novo, *United States v. Beard*, 161 F.3d 1190, 1193 (9th Cir. 1998).

A.  *Statutory and Constitutional Framework*

A criminal defendant has both a statutory and a constitutional right to be "present" during trial proceedings. The source of the statutory right is Federal Rule of Criminal Procedure 43, which provides in relevant part that "the defendant must be present at . . . every trial stage, including jury impanelment and the return of the verdict," Fed. R. Crim. P. 43(a)(2), but the "defendant need not be present . . . [if] [t]he proceeding involves only a conference or hearing on a question of law," Fed. R. Crim. P. 43(b)(3).

On the constitutional level, "[a] person charged with a felony has a fundamental right to be present at every stage of the trial . . . [including] the voir dire and empanelling of the jury." *Campbell v. Wood*, 18 F.3d 662, 671 (9th Cir. 1994) (en banc) (citing *Illinois v. Allen*, 397 U.S. 337, 338 (1970) and *Diaz v. United States*, 223 U.S. 442, 455 (1912)). "The right of presence derives from the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments." *Id.* (citing *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam)).

Importantly, the scope of Rule 43 is broader than the scope of the constitutional right to be present. *See United States v. Rosales-Rodriguez*, 289 F.3d 1106, 1109 (9th Cir. 2002) (stating that, in addition to the constitutional right to be present, "[t]he defendant also has a broader statutory right to be present 'at every stage of the trial including the impaneling of the jury and the return of the verdict'" (quoting Fed. R. Crim. P. 43)); *United States v. Sherman*, 821 F.2d 1337, 1339 (9th Cir. 1987) ("The right to be present at every stage of the trial set forth in Rule 43 is more far-reaching than the right of a defendant to attend his trial as guaranteed by the Constitution."). The statute sweeps more broadly than the corresponding constitutional right because Rule 43 incorporated the more expansive common law understanding of the right as well as the constitutional standard. *See United States v. Rolle*, 204 F.3d 133, 137 (4th Cir. 2000) (citing Fed. R. Crim. P. 43, 1944 Advisory Committee Note, Para. 1).

B. *Federal Rule of Criminal Procedure 43*

   1.   Violation of Federal Rule of Criminal Procedure 43

   As an initial matter, we must distinguish between two different kinds of side bar exchanges that occurred during jury selection in this case. On one occasion, the court questioned a prospective juror—Juror H—at the bench. On seventeen other occasions, the lawyers for both parties met the court at side bar to request that jurors be excused for cause, exercise peremptory challenges, or discuss whether to continue with the proceedings even though two prospective jurors had not yet returned from lunch. During those seventeen exchanges, neither the court nor the attorneys spoke with a prospective juror or anyone else. We conclude that the district court violated Rule 43 when it questioned Juror H outside of Reyes's earshot, but the district court did not violate Rule 43 by refusing Reyes's request to be present during the other seventeen side bar exchanges.

      a.   Voir dire of Juror H

   Rule 43(a)(2) provides in part that "the defendant must be present at . . . every trial stage." In the context of analyzing the constitutional right to be present, we have explained that voir dire is a trial stage. *See Campbell*, 18 F.3d at 671. Because Rule 43 encompasses the constitutional right to be present, voir dire is also a "trial stage" as the phrase is used in the rule. *See Rosales-Rodriguez*, 289 F.3d at 1109. The term "voir dire" means, among other things, "[a] preliminary examination of a prospective juror by a judge or lawyer to decide whether the prospect is qualified and suitable to serve on a jury." *Black's Law Dictionary* 1710 (9th ed. 2009). The district court thus conducted "voir dire" of Juror H at side bar

when it asked about her ability to be fair and impartial in light of her personal experiences with bank robbery, because the conversation concerned whether she was "qualified and suitable to serve on a jury."

We have previously observed that "[t]here is authority that Rule 43 requires the defendant's presence at the voir dire examination of prospective jurors." *United States v. Bordallo*, 857 F.2d 519, 522 (9th Cir. 1988), *amended on reh'g by* 872 F.2d 334 (9th Cir. 1989). Indeed, other courts have held that the defendant has a statutory right to be present when the district court conducts voir dire at the bench. *See, e.g.*, *United States v. Cuchet*, 197 F.3d 1318, 1319–20 (11th Cir. 1999) (discussing Rule 43 in concluding that "the district court likely did err in excluding Defendant, over his express objection, from a part of the confidential voir dire of prospective jurors conducted at the bench"); *United States v. Ford*, 88 F.3d 1350, 1369 (4th Cir. 1996) (quoting Rule 43(a) before observing that "the defendants had the right to be present during the bench conferences with the jurors"); *United States v. Washington*, 705 F.2d 489, 497 (D.C. Cir. 1983) (per curiam) ("[T]here is little doubt that under rule 43, the appellant had a right to hear that part of the voir dire conducted at the bench after counsel made his request.").

We agree with these courts that, under Rule 43, the defendant has a right to be personally present during voir dire of prospective jurors. The district court erred by questioning Juror H to determine whether she was "qualified and suitable to serve on a jury" when Reyes had a standing objection to

his exclusion from the side bar conferences.[1] The court could have complied with Rule 43 either by permitting Reyes to join his attorney at the bench while the court conversed with Juror H or by questioning her in open court.

### b. The seventeen other side bar exchanges

The district court did not violate Rule 43, however, when it excluded Reyes from the seventeen other side bar exchanges. According to Rule 43(b)(3), the "defendant need not be present . . . [if] [t]he proceeding involves only a conference or hearing on a question of law." We have not yet squarely decided whether Rule 43 requires the defendant's presence where, as here, the attorneys meet with the court to discuss which jurors to dismiss for cause, exercise peremptory challenges, or consider whether to proceed with voir dire in the absence of some prospective jurors.[2] We now

---

[1] The exchange with Juror H was brief, but the language of the statute does not allow for exceptions on the basis that the trial stage from which the defendant was excluded was brief, redundant, or unimportant.

[2] In *United States v. Fontenot*, 14 F.3d 1364 (9th Cir. 1994), we expressly refrained from deciding whether Rule 43 mandated the defendant's presence at a peremptory challenge conference. *Id.* at 1370 & n.2. We held that it was not plain error for the district court to receive the parties' peremptory challenges outside of the presence of the defendant when the defendant "had the opportunity to discuss his misgivings with counsel during and immediately following voir dire, prior to exercising his peremptory challenges." *Id.* at 1370. But we did not decide whether the peremptory challenge conference is a "trial stage" under Rule 43(a)(2) or whether it is a "hearing on a question of law" under Rule 43(b)(3).

Our decision in *Bordallo* also did not reach this issue. There, we observed that Rule 43 distinguishes "between the ministerial stage of drawing the prospective juror pool and the formal pretrial narrowing of the pool through voir dire for a particular trial." *Bordallo*, 857 F.2d at 523.

hold that meetings between counsel and the court at which the participants discuss whether jurors should be excused for cause, exercise peremptory challenges, or decide whether to proceed in the absence of prospective jurors are all examples of "a conference or hearing on a question of law" from which the defendant may be excluded at the district court's discretion.

"Although [Rule 43(b)(3)] leaves the term 'question of law' undefined, the term typically refers to '[a]n issue to be decided by the judge, concerning the application or interpretation of the law.' An issue can be a 'question of law,' moreover, 'although it may turn on a factual point,' so long as it 'is reserved for the court and excluded from the jury.'" *United States v. Gonzales-Flores*, 701 F.3d 112, 116 (4th Cir. 2012) (second alteration in original) (internal citation omitted) (quoting *Black's Law Dictionary* 1366 (9th ed. 2009)). Whether a prospective juror should be excused

---

We noted that "there is authority that the defendant has no right to be present during the drawing of the jury by the jury commissioners," while, by contrast, "[t]here is authority that Rule 43 requires the defendant's presence at the voir dire examination of prospective jurors." *Id.* at 522. We concluded that the district court erred by excluding certain jurors from the jury pool before either the defendant or his lawyer arrived because the action was more analogous to "the voir dire examination of prospective jurors" than "the ministerial stage of drawing the prospective juror pool." *Id.* at 522–23. But we had no reason to consider whether the proceedings at issue were "a conference or hearing on a question of law" such that the defendant's presence was not required. The district court in *Bordallo* did not hold a "conference" or "hearing" on which jurors to excuse, given that it made the decision on its own without conferring with counsel and without even waiting for the attorneys to arrive in court. *Id.* at 522. Here, the district court always conferred with the attorneys for both parties before excusing jurors, and then dismissed the jurors in open court in Reyes's presence.

initially involves a fact-intensive inquiry into her answers and demeanor during voir dire, among other things. That is why we held, *supra*, that the district court erred by conducting voir dire of Juror H outside of Reyes's presence, thereby potentially depriving him of information that he needed to assist his attorneys in making an informed decision about whether she should be seated on the jury.

But the side bar exchanges where the attorneys argued that certain prospective jurors should be excused for cause consisted solely of legal arguments based on facts that had already been elicited in Reyes's presence. The district court's determination whether to excuse a particular prospective juror for cause is a question of law. *See Perez v. Marshall*, 119 F.3d 1422, 1426 (9th Cir. 1997) ("Whether a trial court violates a defendant's Sixth Amendment right to a jury trial by excusing a juror for good cause and replacing that juror with an alternate is a question of law . . . ."). A side bar exchange where the court decides whether to excuse a juror for cause is, therefore, "a conference or hearing on a question of law" at which the defendant need not be present under Rule 43(b)(3). Likewise, a side bar exchange where the attorneys exercise peremptory challenges involves only the application of legal rules, such as whether the parties have used no more than the allotted number of peremptory challenges. Other than the single instance where the court questioned Juror H, all of the side bar conferences in this case were properly conducted outside of Reyes's presence because they involved "[a]n issue to be decided by the judge, concerning the application or interpretation of the law." *Gonzales-Flores*, 701 F.3d at 116 (quotation marks and citation omitted).

We offered guidance on determining whether a conference or hearing involves a "question of law" in *United States v. Veatch*, 674 F.2d 1217 (9th Cir. 1981). There, the defendant was excluded from a pretrial conference where the court and attorneys discussed the defendant's motion for an evidentiary hearing regarding his competency to stand trial and motions related to a proposed insanity defense. *Id.* at 1225. We held that Rule 43 did not mandate the defendant's presence because his "presence would have contributed nothing substantial to his opportunity to defend since the matters discussed predominantly involved questions of law." *Id.* at 1226. Other courts have similarly reasoned that the defendant's exclusion from a conference or hearing is permitted by Rule 43(b)(3) when the defendant's presence would probably be meaningless as a practical matter. *See, e.g.*, *Gonzales-Flores*, 701 F.3d at 118 ("[T]he whole point of the right to be present (in both its constitutional and statutory dimensions) is to permit the defendant to contribute in some meaningful way to the fair and accurate resolution of the proceedings against him."); *United States v. Jones*, 674 F.3d 88, 94 (1st Cir. 2012) ("Rule 43 carves out an explicit exception for 'a conference or hearing on a question of law,' the rationale surely being that a defendant's presence on a legal issue (whether at sidebar or in chambers) is not going to aid the defense counsel in making such arguments." (internal citation omitted)); *United States v. Moe*, 536 F.3d 825, 830 (8th Cir. 2008) (explaining that a number of judicial "decisions reflect an understanding that the Rule 43(b)(3) exception hinges on whether the defendant's absence would impact his 'opportunity to defend against the charge'" (quoting *Gagnon*, 470 U.S. at 526)).

Here, Reyes's presence at the seventeen side bar exchanges where neither the attorneys nor the court spoke

with a prospective juror "would have contributed nothing substantial to his opportunity to defend." *Veatch*, 674 F.2d at 1226. The court placed no limits on Reyes's ability to convey to his attorneys which jurors he thought should be excused for cause or how he wanted to use his peremptory challenges. And it permitted Reyes's lawyers to confer with their client before making decisions, thereby giving his counsel an opportunity to explain the government's position to Reyes after the side bar exchanges. The court also identified in open court each juror that had been excused so that Reyes would have known if his attorneys had mistakenly challenged the wrong juror.

Several other courts have held that Rule 43 does not require the defendant's presence under similar circumstances. *See, e.g.*, *United States v. Curtis*, 635 F.3d 704, 716 (5th Cir. 2011) (holding that the defendant's "right to be present at every stage of his trial" was not violated where he "was present when the peremptory challenges were given formal effect via the impaneling of the jury" and had an "opportunity to consult with his attorney before his attorney submitted the peremptory challenges"); *United States v. Gayles*, 1 F.3d 735, 738 (8th Cir. 1993) ("[The defendant] was present in the courtroom while the potential jurors were questioned. Although [the defendant] was absent later when his attorney made his strikes . . . [the defendant] was present in the courtroom when the clerk gave the strikes effect by reading off the list of jurors who had not been stricken. . . . [The defendant] was sufficiently present at the jury's impaneling to satisfy Rule 43 and the Constitution."); *United States v. Bascaro*, 742 F.2d 1335, 1349–50 (11th Cir. 1984) (holding that "the defendants were sufficiently present at the impaneling of the jury to satisfy the sixth amendment and Rule 43" where the defendants were in the courtroom when

voir dire occurred and they had an opportunity to confer with their attorneys), *abrogated in part on other grounds by United States v. Lewis*, 492 F.3d 1219 (11th Cir. 2007) (en banc).

The cases from other circuits holding that Rule 43 was violated when the defendant was excluded from a portion of jury selection are distinguishable. For example, in *United States v. Thomas*, 724 F.3d 632 (5th Cir. 2013), the court held that "[the defendant's] absence from the exercise of peremptory challenges was in deviation from her rights both under the Fifth Amendment Due Process Clause and under the express provisions of Fed. R. Crim. P. 43." *Id.* at 643. But the court's holding was premised on the fact that "[the defendant] was not present when trial counsel exercised peremptory challenges *or when the court read the list of jurors who were not struck into the record*." *Id.* (emphasis added). Here, Reyes was present when each juror was excused in open court and when the jury was sworn in. In *United States v. Gibbs*, 182 F.3d 408 (6th Cir. 1999), the court stated that "[t]he absence of the defendants from the peremptory challenge conference may sometimes constitute reversible error." *Id.* at 438. But the court did not elaborate on when the defendant's absence would be inconsistent with Rule 43. Nor did the court decide the case before it on the grounds that the defendant's absence violated the rule.

2. Harmless error analysis

Having determined that the district court violated Rule 43(a)(2) when it conducted voir dire of Juror H outside of Reyes's presence, we must assess whether the error was harmless. We conclude that the side bar voir dire of Juror H was harmless because the evidence of Reyes's guilt was

overwhelming. *See Rosales-Rodriguez*, 289 F.3d at 1111 (observing that "the evidence against the defendant was overwhelming" in holding that a constitutional violation was harmless beyond a reasonable doubt). At trial, the government introduced Reyes's recorded confession, the testimony of a bank employee who identified him as the culprit, and video footage from the bank. Because the outcome would remain unchanged if Reyes had been present when the court questioned Juror H at side bar, the violation of Rule 43 was harmless. *Rosales-Rodriguez*, 289 F.3d at 1111.

## C.  *Constitutional Right To Be Present*

We next consider whether Reyes's constitutional right to be present was violated when the district court refused his request to join his attorneys at the side bar conferences during jury selection. We conclude that no constitutional violation occurred.

"[A] defendant charged with a felony has a fundamental right to be present during voir dire." *Sherwood*, 98 F.3d at 407; *see also Campbell*, 18 F.3d at 671. But the Constitution is not implicated every time a defendant is excluded from a trial stage, for "[a]lthough the right of a defendant to be present at his trial is 'ancient and well-established,' it is not all encompassing or absolute." *Veach*, 674 F.2d at 1225 (internal citation omitted).

In *Snyder v. Massachusetts*, 291 U.S. 97 (1934), the Supreme Court, in an opinion by Justice Cardozo, noted that "in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend

against the charge." *Id.* at 105–06. With respect to voir dire, the Court noted that the "defense may be made easier if the accused is permitted to be present at the examination of jurors . . . for it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself." *Id.* at 106. But the Court went on to observe that "[n]owhere in the decisions of [the Supreme Court] is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence *when presence would be useless, or the benefit but a shadow*." *Id.* at 106–07 (emphasis added). The Court later reemphasized that the constitutional right to be present is not absolute, holding that "the presence of a defendant is a condition of due process *to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only*." *Id.* at 107–08 (emphasis added).[3]

The Court reaffirmed this holding in *Faretta v. California*, 422 U.S. 806 (1975), where it observed that "[i]t is now accepted . . . that an accused has a right to be present at all stages of the trial *where his absence might frustrate the fairness of the proceedings*." *Id.* at 819 n.15 (emphasis

---

[3] In *Lewis v. United States*, 146 U.S. 370 (1892), the Court stated that "[a] leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner." *Id.* at 372. But the Court set aside this principle in *Snyder* when it explained that the Court's previous statements "on the subject of the presence of a defendant [were] dict[a], and no more." *Snyder*, 291 U.S. at 117 n.2. The *Snyder* Court further observed that the discussion of the right to be present in *Lewis* "deals with the rule at common law and not with constitutional restraints." *Id.* In *Allen*, the Court again expressly repudiated *Lewis* in observing that "[t]he broad dicta in [*Hopt v. Utah*, 110 U.S. 574 (1884)] and [*Lewis*] that a trial can never continue in the defendant's absence have been expressly rejected." *Allen*, 397 U.S. at 342.

added).  And the Court applied this principle in *Gagnon* in holding that "[t]he mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right.  The defense has no constitutional right to be present at every interaction between a judge and a juror." *Gagnon*, 470 U.S. at 526 (internal quotation marks and citation omitted).

1.  Voir dire of Juror H

Reyes's exclusion from the side bar conference where the court conducted voir dire of Juror H was not an instance where the defendant's "absence might frustrate the fairness of the proceedings." *Faretta*, 422 U.S. at 819 n.15.  It was instead an example of an exchange where his presence would have been "but a shadow." *Snyder*, 291 U.S. at 106–07.

A defendant's presence during voir dire is important because it allows him to observe the prospective jurors' answers and demeanor so that he can assist his attorney in constructing an impartial jury. *See Bustamante v. Eyman*, 456 F.2d 269, 274 (9th Cir. 1972) ("The right to be present at trial stems in part from the fact that by his physical presence the defendant can hear and see the proceedings, can be seen by the jury, and can participate in the presentation of his rights."); *see also Rolle*, 204 F.3d at 137 (explaining that the defendant might "have knowledge of facts about himself or the alleged crime . . . which may become important as the individual prejudices or inclinations of the jurors are revealed" and that he "may also be a member of the community in which he will be tried and might be sensitive to particular local prejudices his lawyer does not know about" (quotation marks and citation omitted)).  But Reyes's absence when the court questioned Juror H at side bar did not

meaningfully affect his ability to assist his attorneys in evaluating her as a prospective juror. The exchange between the court and Juror H was brief, and Reyes's attorney could have offered his client a full account of the conversation between the court and Juror H given the brevity of the exchange and the court's willingness to permit them to confer throughout voir dire. *See Gagnon*, 470 U.S. at 527 ("The encounter between the judge, the juror, and [the defendant's] lawyer was a short interlude in a complex trial; the conference was not the sort of event which every defendant had a right personally to attend under the Fifth Amendment."). Of course, "the presence of counsel is no substitute for the presence of the defendant himself." *Bustamante*, 456 F.2d at 274. But the ease and reliability with which an attorney can relay the details of a side bar exchange to the defendant is one factor that affects whether the defendant's absence might undermine the fundamental fairness of the proceeding. *See Gagnon*, 470 U.S. at 526–27 ("[T]he exclusion of a defendant from a trial proceeding should be considered in light of the whole record" (citing *Snyder*, 291 U.S. at 115)).

The defendant's right to be present is also an important means to "safeguard the public's interest in a fair and orderly judicial system." *Bustamante*, 456 F.2d at 274–75. But Reyes's exclusion from a short conversation between the court and a prospective juror that was witnessed by counsel and transcribed does not threaten the integrity of the judicial system. To the contrary, to hold that the Constitution extends to the defendant the right to be present at every exchange between the court and a prospective juror might interfere with the trial court's ability to maintain a secure and orderly environment. *See Rushen v. Spain*, 464 U.S. 114, 119 (1983) (chastising the lower courts for "ignor[ing] the[ ] day-to-day

realities of courtroom life and undermin[ing] society's interest in the administration of criminal justice" by strictly limiting unrecorded *ex parte* communications between trial courts and jurors).

Other courts have held that a defendant's exclusion from a portion of voir dire does not cast doubt on the fundamental fairness of the proceedings. In *Washington*, the district court questioned thirteen prospective jurors at side bar about their prior involvement with the criminal justice system. *Washington*, 705 F.2d at 496. The court refused the defendant's request to participate. *Id.* Two of the prospective jurors questioned outside of the defendant's presence were eventually seated on the jury. *Id.* at 498. The D.C. Circuit, in a per curiam opinion joined by then-Judge Ruth Bader Ginsburg, held, as we do here, that the exclusion of the defendant from part of voir dire violated Rule 43 *but not the Constitution*. *Id.* at 497 n.5 ("The constitutionally mandated minimum protection a defendant is entitled to under rule 43(a) is fundamental fairness. This minimum of fairness was certainly met in this case . . . . We stress this only to amplify that our holding is based on rule 43(a), not directly on the Sixth Amendment confrontation clause or the due process guarantee of the Constitution." (internal citations omitted)). Similarly, in *Bland v. Sirmons*, 459 F.3d 999 (10th Cir. 2006), "the trial court conducted a limited *voir dire* of thirty-two individual jurors in chambers" without the defendant present before conducting the rest of voir dire in open court. *Id.* at 1020. The court held that the defendant's absence from part of voir dire was "not enough to establish a constitutional violation" because "[c]onsidering [the defendant's] absence from individual *voir dire* in light of the entire jury selection process, [the defendant] had ample opportunity to observe jurors during *voir dire* and exercise peremptory challenges

accordingly." *Id.* at 1021; *see also Kilmartin v. Dormire*, 161 F.3d 1125, 1127 (8th Cir. 1998) (holding that the defendant's constitutional right to be present was not violated when the trial court spoke with six prospective jurors outside of the defendant's earshot about matters that the prospective jurors wished to discuss privately). In all three of these cases—*Washington*, *Bland*, and *Kilmartin*—the trial court conducted voir dire of multiple jurors outside of the defendant's presence without transgressing the constitutional right to be present. These authorities bolster our conclusion that the district court's decision to briefly question a single juror outside of Reyes's presence did not create a scenario where the defendant's "absence might frustrate the fairness of the proceedings." *Faretta*, 422 U.S. at 819 n.15.

We note that the Second Circuit reached a contrary conclusion in *Cohen v. Senkowski*, 290 F.3d 485 (2d Cir. 2002). There, the trial court held "pre-screening" proceedings where it questioned all of the prospective jurors outside of the defendant's presence about their exposure to media reports about the case. *Id.* at 487. Two of the jurors who stated that they were familiar with the case were eventually seated on the jury. *Id.* The trial court conducted the remainder of voir dire in open court, though on three occasions the court again questioned prospective jurors outside of the defendant's presence about possible bias based on pretrial publicity and the nature of the charges. *Id.* The Second Circuit concluded that the defendant's right to be present was violated, stating that "[p]re-screening of a jury venire is not comparable to the brief conference between judge and juror in [*Gagnon*], nor a procedure at which a defendant's presence would be 'useless,' as per [*Snyder*]." *Id.* at 489 (internal citations omitted). *Cohen* is distinguishable from this case on several levels. There, the

trial court questioned all of the prospective jurors outside of the defendant's presence rather than just one prospective juror. And the *Cohen* court did not indicate that the defendant's attorney was permitted to pause the presumably lengthy "pre-screening" process with all of the prospective jurors to confer with his client about their answers.

To the extent that *Cohen* can be read as holding that the defendant's absence from a portion of voir dire *always* causes a violation of the constitutional right to be present, we respectfully disagree. In *Snyder*, the Supreme Court specifically mentioned the defendant's right "to be present at the examination of jurors" before holding that "the presence of a defendant is a condition of due process *to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only*." *Snyder*, 291 U.S. at 106–08 (emphasis added). We therefore follow the rule that the exclusion of the defendant from a portion of voir dire violates the Constitution only if "his absence might frustrate the fairness of the proceedings." *Faretta*, 422 U.S. at 819 n.15; *see also Bland*, 459 F.3d at 1020–21; *Washington*, 705 F.2d at 497 n.5. Applying this rule, we conclude that although the district court's decision to conduct voir dire of Juror H outside of Reyes's presence was inconsistent with Rule 43, it did not violate the narrower protections afforded by the Constitution.

2. The seventeen other side bar exchanges

The district court's decision to exclude Reyes from the seventeen other side bar exchanges—where the attorneys argued that jurors should be excused for cause, exercised peremptory challenges, and discussed whether to proceed in the absence of some prospective jurors—was likewise consistent with the Constitution. These conferences on

questions of law are prototypical examples of instances "when presence would be useless, or the benefit but a shadow." *Snyder*, 291 U.S. at 106–07. Reyes would have merely observed the proceedings while the attorneys made arguments about which jurors should be excused for cause and exercised peremptory challenges. As in *Gagnon*, he "could have done nothing had [he] been at the conference, nor would [he] have gained anything by attending." *Gagnon*, 470 U.S. at 527.

In *Fontenot*, we held, on plain error review, that the district court did not err in having the attorneys exercise their peremptory challenges outside of the defendant's presence where, as here, the defendant had the opportunity to confer with his lawyer after voir dire and before the conference. *Fontenot*, 14 F.3d at 1370. Furthermore, Reyes was able to observe the composition of the jury on an ongoing basis and correct any mistakes made by his lawyer in exercising his peremptory challenges because the district court struck each juror in open court. *See Cohen*, 290 F.3d at 490 (holding that the defendant "did not have a constitutional right to be present during the juror challenges" conducted in his absence where he "was represented by counsel at these sessions, . . . given an opportunity to consult with counsel before the sessions began, and . . . the challenges were later effectuated in open court"); *Gayles*, 1 F.3d at 738; *Bascaro*, 742 F.2d at 1349–50. This is not a case where the defendant was absent when jurors were excused or when the jury was impaneled. *See Thomas*, 724 F.3d at 643 ("[I]f a defendant is not present during the reading of the list of jurors not struck (the moment the strikes are given 'formal effect') then the absence is in derogation of his constitutional right to be present.").

The district court's decision to exclude Reyes from the side bar conferences did not violate his constitutional right to be present. Because no constitutional violation occurred, we need not address whether the alleged error was harmless beyond a reasonable doubt.[4]

---

[4] Reyes contends that excluding a defendant from a portion of jury selection is a structural error that is not susceptible to harmless error review. Although we need not address the issue in this case because no constitutional violation occurred, we note that we have previously held that a violation of the defendant's right to be present is subject to harmless error review. *See Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005) (en banc) ("The Supreme Court has never held that the exclusion of a defendant from a critical stage of his criminal proceedings constitutes a structural error. To the contrary, in [*Rushen*, 464 U.S. at 117], the Court determined that the fact that the defendant was denied the right to be present during an *ex parte* communication between the judge and a juror was a trial error that was subject to harmless error analysis."); *Bordallo*, 857 F.2d at 522–23 (holding that the "violation of a defendant's due process right to be present at all stages of trial is subject . . . to the harmless error rule" in a case where the defendant was not present when the district court excused prospective jurors, some of whom it concluded were friends or supporters of the defendant (internal quotation marks and citation omitted)).

Reyes relies on *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), where the Court held that the "erroneous deprivation of the right to counsel of choice . . . qualifies as 'structural error.'" *Id.* at 150 (internal quotation marks and citation omitted). But *Gonzalez-Lopez* does not affect our cases holding that the erroneous deprivation of the defendant's right to be present is subject to harmless error review. We have continued to apply these precedents after the Supreme Court issued its opinion in *Gonzalez-Lopez*. *See Marks*, 530 F.3d at 812 ("If the denial of the right to be present rises to the level of a constitutional violation, then 'the burden is on the prosecution to prove that the error was harmless beyond a reasonable doubt.'" (quoting *Rosales-Rodriguez*, 289 F.3d at 1109)); *Hovey v. Ayers*, 458 F.3d 892, 903 (9th Cir. 2006) ("[A]s we recently held in *Campbell v. Rice*, a violation of the right to be present is trial error, subject to harmless error review.").

III.

Finally, Reyes contends that his sentence is substantively unreasonable. "The substantive reasonableness of a sentence . . . is reviewed for abuse of discretion." *United States v. Autery*, 555 F.3d 864, 871 (9th Cir. 2009).

The district court imposed a sentence of 125 months' imprisonment, with thirty-six months to run consecutive to the state sentence that Reyes was already serving for having pled guilty to second-degree robbery. The sentence was at the high end of the Guidelines range of 100–125 months. "In determining substantive reasonableness, we are to consider the totality of the circumstances." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). "The overarching statutory charge for a district court is to 'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or

Other courts have likewise held that a violation of the defendant's right to be present is not a structural error. *See, e.g.*, *United States v. Rivera-Rodriguez*, 617 F.3d 581, 601–04 (1st Cir. 2010) (holding no structural error where the district court questioned fifteen prospective jurors outside of the presence of the defendants and their attorneys); *United States v. Riddle*, 249 F.3d 529, 535 (6th Cir. 2001) ("[T]he right to be present at voir dire is not one of those structural rights whose violation constitutes per se error."); *Feliciano*, 223 F.3d at 111 ("[D]efendants have cited no case—and we have found none—in which an appellate court has found a structural defect where a defendant was present throughout but unable to hear a circumscribed portion of *voir dire*, and whose counsel was allowed to consult with him about the limited questioning outside his hearing.").

other correctional treatment." *Id.* at 991 (quoting 18 U.S.C. § 3553(a)).

The district court did not abuse its discretion in imposing the sentence in this case. At the sentencing hearing, the court referenced Reyes's extensive criminal history and tendency to commit crimes soon after being released from custody. Reyes committed the attempted bank robbery at issue here less than a week after he was released from California state prison, where he served part of a sixteen-month sentence. He is presently serving a state sentence for a robbery he committed two weeks after the attempted bank robbery. On five previous occasions, Reyes was convicted of offenses that he committed within a few months after being released from prison. While only one of his previous offenses involved violence, Reyes's criminal history is lengthy and serious enough to support the district court's conclusion that a sentence at the high end of the Guidelines range was necessary to promote respect for the law and to deter him from committing additional crimes. *See United States v. Ruiz-Apolonio*, 657 F.3d 907, 920 (9th Cir. 2011); *United States v. Ringgold*, 571 F.3d 948, 953 (9th Cir. 2009). The district court also noted that Reyes's attempted bank robbery involved a threat of violence. Although there was no evidence that Reyes was actually armed, a threat of violence used to enable a bank robbery could nevertheless place bystanders at risk as security guards and police officers proceed on the assumption that the defendant is carrying a weapon. *Cf. United States v. Bendtzen*, 542 F.3d 722, 724, 728–29 (9th Cir. 2008).

Reyes's reliance on *United States v. Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009), is unavailing. There, we deemed a sentence substantively unreasonable because it was

based on a sixteen-level enhancement for a violent felony that the defendant had committed twenty-five years earlier, and there was no indication that the defendant had "harmed or attempted to harm another person or the property of another for the past twenty years." *Id.* at 1056. Here, by contrast, Reyes's criminal history is both extensive and recent. *See United States v. Valencia-Barragan*, 608 F.3d 1103, 1109 (9th Cir. 2010).

The district court did not abuse its discretion in surmising that a sentence at the high end of the Guidelines range was necessary to provide just punishment and protect the public when the circumstances of the offense are viewed in combination with Reyes's criminal history. "[O]ur review of the substantive reasonableness of a sentence is deferential and will provide relief only in rare cases." *United States v. Ressam*, 679 F.3d 1069, 1088 (9th Cir. 2012) (en banc). This is not one of those "rare cases" where the district court abused its discretion by imposing a substantively unreasonable sentence.

IV.

We conclude that the district court's decision to conduct voir dire of Juror H outside of Reyes's presence violated Federal Rule of Criminal Procedure 43. But the error was harmless because "there is no reasonable possibility that prejudice resulted from the absence." *Marks*, 530 F.3d at 813 (internal quotation marks and citation omitted). We hold that Reyes's exclusion from the side bar exchanges during jury selection did not violate his constitutional right to be present because the conferences were not instances where the defendant's "absence might frustrate the fairness of the proceedings." *Faretta*, 422 U.S. at 819 n.15. Rather, any

benefit of Reyes's presence at side bar would have been "but a shadow." *Snyder*, 291 U.S. at 106–07. Finally, we conclude that the district court did not impose a substantively unreasonable sentence. We therefore **AFFIRM** the district court's judgment.